UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 4 MVR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-10674-DJC |
| | ) | |
| WARREN W. HILL CONSTRUCTION | ) | |
| COMPANY, INC. and | ) | |
| WARREN W. HILL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**Casper, J.**                                                                                                                                                   July 23, 2012

### I. Introduction

Plaintiff 4 MVR, LLC ("4 MVR") brought this action against Defendants Warren Hill ("Hill") and Warren W. Hill Construction Company, Inc. ("the Company" or "the Contractor") (collectively, "the Defendants") arising from a dispute concerning the construction of a residence on Nantucket, Massachusetts. 4 MVR has moved for trustee process, a temporary restraining order ("TRO") and a preliminary injunction. In response, the Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 4MVR has moved for leave to amend its complaint. For the reasons discussed below, the Defendants' motion to dismiss and 4 MVR's motion for trustee process, TRO and preliminary injunction are DENIED.

### II. Factual Allegations

On February 22, 2010, the Company entered into an agreement to construct a residence located at 4 Middle Valley Road on Nantucket ("the Agreement"). Compl. at ¶ 8. The Company

1

had won a competitive bidding process by submitting the lowest bid for the construction project ("the Project"). Id. at ¶¶ 6-7. Prior to the bidding deadline, Defendant Hill informed 4 MVR that he had arranged sufficient financing to enable the Company to complete the Project. Id. at ¶ 7. The Company made various express representations and warranties including that the Company was financially solvent and possessed sufficient working capital to complete the project. Id. at ¶ 12. The Agreement was for a fixed, lump sum price of $22,751,741. Id. at ¶ 9.[1]

During its work on the Project, the Company submitted applications and certificates for payment under the Agreement. Id. at ¶ 15; Ex. A. In connection with each application and certificate for payment the Company submitted for the Project, the Company certified, among other things, that "the Work covered by [that] Application for Payment has been completed . . . that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that the current payment herein is now due." Id. Hill signed forty-one Pay Applications on behalf of the Company. Id. The last Pay Application the Company submitted represented that, as of January 6, 2012, it had performed Work in an amount equaling over 71.8% of the total cost of the Project. Id. 4 MVR alleges that the Project was not 71.8% complete and the Company had not in fact paid a number of subcontractors and suppliers for work for which it had previously paid the Company through Pay Application No. 41. Id. at ¶ 16.

On January 7, 2012, the Defendants notified 4 MVR that the Company could no longer perform the Agreement to completion, stating that it needed a four-month extension and an

---

[1]During the course of the Project, 4MVR approved change orders increasing the price to $23,135,363.75. Id.

additional $1.5 million to complete the Project. Id. at ¶¶ 17-18. The Defendants also informed 4 MVR that the Company would not have sufficient financial resources to complete the Project including paying subcontractors if it had to perform under the terms of the Agreement. Id. at ¶ 18. 4 MVR submitted the Defendants' letter to the Architect, the person designated as the Initial Decision Maker ("IDM") under the Agreement with the authority to certify grounds for termination of the Agreement. Id. at ¶ 19. 4 MVR requested that the IDM certify that sufficient grounds existed under the Agreement to terminate the Contractor based, in part, on the Contractor's January 7, 2012 letter. Id. On January 11, 2012, the IDM notified 4 MVR and the Defendants that sufficient grounds existed to terminate the Agreement for cause. Id. at ¶ 20, Ex. C (1/11/2012 letter). In a subsequent letter, the IDM explained that 4 MVR had grounds to terminate the Contractor's services due to the Contractor's failure to render timely performance and admitted inability to complete the work at the Project for the balance of the contract sum in violation of the Agreement, among other reasons. Id. at ¶ 20, Ex. D (1/12/2012 letter). The IDM's letter stated that there had been a "substantial breach of a provision of the Contract Documents." Id., Ex. D. On January 11, 2012, 4 MVR terminated the Contract. Id. at ¶ 21.

After 4 MVR terminated the Contract, it entered into an agreement with Woodmeister Master Builders, Inc. ("Woodmeister") to complete the Project. Id. at ¶ 22. Woodmeister would not agree to a fixed price to complete the remaining work on the Project; rather, it agreed to complete the work on a cost plus fee basis without any cap. Id. 4 MVR assumed and re-assigned to Woodmeister many of the subcontracts for the Project. Id. at ¶ 23.

### III. Procedural History

On April 16, 2012, 4 MVR filed the instant action against the Defendants asserting claims

3

for breach of contract, breach of express and implied warranty, misrepresentation and breach of fiduciary duty. D. 1. 4 MVR also moved for trustee process, a temporary restraining order and a preliminary injunction. D. 2. The Court held a hearing on 4 MVR's motions, during which Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court took the matter under advisement and allowed the parties to submit additional briefing with respect to the Court's subject matter jurisdiction. 4 MVR has now also moved for leave to amend the complaint to address the Defendants' challenge to the Court's subject matter jurisdiction.

## IV. Discussion

### A. 4 MVR's Motion for Leave to Amend the Complaint and the Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." Amendments should be liberally permitted in the absence of undue delay, bad faith or dilatory motive, futility, or undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). The Defendants challenge this Court's subject matter jurisdiction based on lack of complete diversity. 4 MVR seeks leave to amend the complaint to add factual allegations to establish the diversity of citizenship of the parties.

Although the Defendants do not contend that 4 MVR's motion for leave to amend is unduly prejudicial or sought in bad faith or with dilatory motive, they argue that granting 4 MVR's motion for leave to amend would be futile because the proposed amendment does not establish diversity of citizenship of the parties. The proposed amended complaint alleges that the Donald Alan Burns Revocable Trust ("Trust") is the sole member of 4 MVR and that the Trust is a revocable trust that

Burns, as Settlor, created as an estate planning device. D. 18-1 (proposed amended complaint) at ¶ 4(a)-(b). It further alleges that Justin McInerny and Burns have been trustees of the Trust since 4 MVR was formed in 2006, that McInerny is citizen of Maryland and that under the Trust, Burns has the right to make decisions with or without the participation of any co-trustee, has the right to revoke, amend, or terminate the Trust and controls the Trust. Id. at ¶ 4(c)-(f).

"Under 28 U.S.C. § 1332(a)(1), there is diversity of citizenship if the plaintiff is a 'citizen' of a different state than all of the defendants. . . . 'Citizenship' in a state is the equivalent of 'domicile.'" Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991) (citations omitted). The parties agree that as a matter of law, Burn's state of citizenship determines the citizenship of the Donald Alan Burns Revocable Trust. See Pl. Reply at 3, D. 10; Def. Sur-reply at 2, D. 16. As to Burns' citizenship, the proposed amended complaint alleges that he has been a citizen of Florida since 1998 and that he has been a registered voter in Florida since that time and has consistently voted there; he has never been registered to vote in Massachusetts. D. 18-1 at ¶ 4(g)-(h). Burns owns a home in Palm Beach, Florida, considers Florida his primary residence and spends most of his time in Florida. Id. at ¶ 4(i)-(j). Burns has a Florida driver's license and his vehicles are all registered there. Id. at ¶ 4(k)-(l). The amended complaint further alleges that Burns is employed full-time in Florida. Id. at ¶ 4(o).

The Defendants argue that because 4 MVR described the Trust as a "nominee trust" in its reply to the Defendants' opposition to its motion for injunctive relief and 4 MVR has failed to allege facts establishing the nominee trust's citizenship by alleging the citizenship of its beneficiaries in the proposed amended complaint, amending the complaint would be futile. However, regardless of 4 MVR's description of the Trust in its reply brief, the proposed amended complaint does not allege

5

that the Trust is a nominee trust. The proposed amended complaint alleges that the Trust is a revocable trust with exclusive powers vested in Burns, including the right to revoke, amend or terminate the Trust and that Burns controls the Trust. Id. at ¶ 4(a)-(f). Such factual allegations do not support any inference that the Trust is a nominee trust since unlike the trust in this case, the beneficiaries, not the trustee, control a nominee trust. See In Re Grand Jury Subpoena, 973 F.2d 45, 48 (1st Cir. 1992) (listing the characteristics of a nominee trust and noting that complete beneficiary control is the primary difference between a nominee trust and a "true trust"); Zoppo v. Zoppo, 453 F. Supp. 2d 232, 234 (D. Mass. 2006) (noting that "the primary characteristic of a nominee trust is that the trustee has no power to act except at the direction of the beneficiary"). Accordingly, the Court finds the allegations in the amended complaint sufficient to establish that Burns is a citizen of Florida and, therefore, that the Trust is a citizen of Florida. Because the Defendants are citizens of Massachusetts and 4 MVR is a citizen of Florida, complete diversity of the parties exists.

Moreover, there is neither undue delay nor undue prejudice to the Defendants in granting 4 MVR leave to amend its complaint. 4 MVR seeks leave to amend in the early stages of this litigation; no discovery schedule or trial date has yet been set. The amended complaint does not expand the avenues of recovery and the Defendants will have ample time to prepare for and conduct discovery in light of the amended complaint and defend themselves in this litigation. Compare Acosta-Mestre v. Hilton Int'l. of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998) (affirming denial of leave to amend sought a year after the first amended complaint was filed, where granting leave would have resulted in "a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics"). Moreover, the record does not suggest that 4 MVR is acting in bad faith or with dilatory motive in seeking leave to amend the

complaint. Because the amended complaint asserts allegations that establish diversity of citizenship of the parties, such amendment is not futile and 4 MVR's motion for leave to amend the complaint is GRANTED. Defendants' motion to dismiss the original complaint is DENIED as moot in light of the ruling on the motion to amend.

### B. 4 MVR's Motion for Trustee Process, TRO and Preliminary Injunction

4 MVR has moved for trustee process, a TRO and a preliminary injunction to restrain Defendants from conveying, transferring, encumbering or alienating their assets. Although 4 MVR characterizes its motion as being "in the nature of an equitable attachment" and that it is entitled to injunctive relief without showing irreparable harm or a favorable balancing of harms (Pl. Mem. at 12, D. 4), 4 MVR seeks a freeze order to enjoin Defendants from transferring or conveying its assets "in the form of monies, funds, goods, effects, and/or credits of Defendant Warren W. Hill Construction Company Inc." Pl. Mot., D. 2. "[F]reeze orders directed at unspecified assets [in this way] typically are in the nature of preliminary injunctions." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 157 (1st Cir. 2004). "Even though a freeze order may serve many of the same ends as an attachment, the former acts upon a party whereas the latter is directed at specific property." Id. at 161. The relief requested here is an injunction in the nature of a freeze order on assets totaling $6,000,000. The Court, therefore, is guided by the standard governing preliminary injunctions.[2]

"A preliminary injunction is an 'extraordinary and drastic remedy.'" Voice of The Arab

---

[2] "Courts have extended the four-factor test [for preliminary injunctions] to temporary restraining orders." See Latin Am. Music Co. v. Cardenas Fernandez & Assoc., Inc., 2 Fed. Appx. 40, 42 n. 2 (1st Cir. 2001), and cases cited. To warrant the more extraordinary relief of a temporary restraining order, however, a Plaintiff must also demonstrate that his or her injury or loss is "immediate and irreparable." Fed. R. Civ. P. 65(b).

World v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (further citation omitted)). To obtain a preliminary injunction, a plaintiff must show that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." Id. at 32.

Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), both of the first two factors, likelihood of success and irreparable harm, "are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Charlesbank Equity Fund II, 370 F.3d at 162). Even assuming 4 MVR has shown a likelihood of success on the merits on its complaint against Defendants for breach of contract, breach of express and implied warranty, misrepresentation, and breach of fiduciary duty arising out of the Defendants' failure to complete the Project pursuant to the Agreement as initially determined by the IDM, 4MVR has failed to demonstrate it will suffer irreparable harm if an injunction is not issued. See Bradley v. City of Lynn, 433 F. Supp. 2d 157, 162 (D. Mass. 2006) (denying a preliminary injunction where, even if plaintiffs had demonstrated likelihood of success, they had failed to show danger of irreparable harm if the injunction was not granted).

Irreparable harm typically exists where a party has no adequate remedy at law. Charlesbank Equity Fund II, 370 F.3d at 162; Interco, Inc. v. First Nat'l Bank of Boston, 560 F.2d 480, 485 (1st Cir. 1977). Here, 4 MVR seeks an award of damages. Because a damages award will make 4 MVR whole, its legal remedy is adequate and does not support a finding of irreparable harm. See

Charlesbank Equity Fund II, 370 F.3d at 162 (finding that because plaintiff sought an award of pecuniary damages, such an award would make it whole and would be an adequate legal remedy). 4 MVR argues that "if a dissipation of the Defendants' assets occurs" it will be unable to recover its otherwise available damages. Pl. Mem. at 12, D. 4. Such allegation, without evidence demonstrating a dissipation or insolvency of assets is likely to occur, is insufficient to satisfy the heavy burden of showing irreparable harm. A plaintiff must demonstrate more than "conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store" to support a finding of irreparable harm. Charlesbank Equity Fund II, 370 F.3d at 162. The risk of being left with nothing at the final stage of litigation can be faced by "virtually every person who sues another for money damages." Id. at 163.

4MVR's reliance on Deckert v. Ind. Shares Corp., 311 U.S. 282 (1940) to support its argument that alleging a possible dissipation or depletion of assets is sufficient to demonstrate irreparable harm is misplaced. In Deckert, the plaintiffs brought suit under the Securities Act of 1933 alleging fraudulent misrepresentation and concealment in the sale of securities and requested rescission and restitution. Id. at 284. The Supreme Court affirmed the district court's authority to enter a preliminary injunction freezing defendants' assets, noting that the "principal objects" of the suit were rescission and restitution. Id. at 289. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 325 (1999) distinguished Deckert, noting that the preliminary injunction allowed in Deckert "was a reasonable measure to preserve the status quo pending final determination of the questions raised by [a suit in equity]." Grupo, 527 U.S. at 325. In the instant case, 4 MVR does not seek equitable remedies, only damages, and merely alleges, with no supporting evidence, that Defendants are likely to be insolvent and their assets depleted.

The circumstances of this case are also markedly different from those in <u>Teradyne, Inc. v. Mostek Corp.</u>, 797 F.2d 43 (1st Cir. 1986) where injunctive relief was upheld in a breach of contract action. There, the defendant was in the process of liquidating and paying off creditors. <u>Id.</u> at 53. In contrast, the Defendants here hope to continue the operation of their construction business. The only mention of the Defendants' potential financial hardship arose in the context of the January 7, 2012 letter in which the Defendants pointed out that the Company did not have the financial resources to fund the budgetary shortfall and that if it were required to continue the Project to completion at that time for the contract price, it would face serious financial problems. However, the Company indicated that it could finish the Project with a time extension of four months and approximately a ten percent increase, or $1.5 million increase, in the Project budget. Thus, any financial hardship that could have befallen the Defendants was based on completion of the work. 4 MVR terminated its Agreement with the Defendants and hired Woodmeister to complete the Project. 4 MVR offers no evidence to support its argument that Defendants are in fact likely to become insolvent by the time a final judgment is entered. <u>See</u> <u>Ross-Simons of Warwick, Inc.</u>, 102 F.3d at 19 (noting that "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm"). Accordingly, 4 MVR has failed to demonstrate it will suffer irreparable harm if an injunction is not issued.

The Court further concludes that although requiring parties to honor their contractual obligations to one another is in the public interest, the harm to the Defendants significantly outweighs the harm to 4 MVR should injunctive relief be granted. The Defendants will be unable to operate in the ordinary course of business if all of their assets up to the sum of $6,000,000 are frozen. <u>See</u> Warren Aff. ¶ 12, D. 12-1 (attesting that if all Defendants assets are frozen, he will be put out of

business).  Because 4 MVR has failed to satisfy its burden of establishing it will suffer irreparable absent the imposition of an injunction or that the balance of hardships weighs in its favor, its motion for trustee process, a preliminary injunction and temporary restraining order is DENIED.

## V. Conclusion

For the foregoing reasons, 4 MVR's motion for leave to amend the complaint is GRANTED and its motion for trustee process, a preliminary injunction and temporary restraining order is DENIED.  Defendants' motion to dismiss the original complaint is DENIED as moot.

**So ordered.**

                                                     /s/ Denise J. Casper
                                                     United States District Judge