UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                          |
|------------------------------|---|--------------------------|
| 4MVR, LLC,                   | ) |                          |
|     Plaintiff, | ) |                    |
| v.                           | ) |                          |
| WARREN W. HILL,              | ) |                          |
|     Defendant. | ) | Civil Action No. 12-cv-10674 |
| WARREN W. HILL,              | ) |                          |
|     Third-Party Plaintiff, | ) |            |
| v.                           | ) |                          |
| DONALD BURNS,                | ) |                          |
|     Third-Party Defendant. | ) |         |

## MEMORANDUM AND ORDER

**CASPER, J.**      June 24, 2015

### I. Introduction

4MVR, LLC ("4MVR") filed this lawsuit against Defendant Warren H. Hill ("Hill") alleging misrepresentation and violation of Mass. Gen. L. c. 93A, § 9 or § 11 ("Chapter 93A"). D. 81. Hill asserts third-party claims against Donald Burns ("Burns") for contribution, violation of Mass. Gen. L. c. 93, § 11, misrepresentation and fraud.[1] D. 82 at 20-22. Burns moves for

---

[1] Hill asserted a counterclaim against 4MVR and a third-party complaint against Burns for breach of contract which was dismissed pursuant to an assented to motion. D. 112, D. 114.

1

judgment on the pleadings with respect to the third-party claims asserted against him by Hill. D. 120. Hill moves for leave to amend his third party complaint to assert claims for contribution against Burns and Jacobsen Architecture, LLC ("Jacobsen"), D. 150, and Jacobsen moves to intervene to oppose this motion, D. 153. 4MVR moves for partial judgment on the pleadings and to dismiss certain of Hill's affirmative defenses. D. 123. Finally, Hill moves to compel the parties to participate in mediation. D. 115. For the reasons stated below, the Court ALLOWS the motion for judgment on the pleadings with respect to Hill's third-party claims against Burns and DENIES Hill's motion to amend the third party complaint.[2] The Court also DENIES as moot Jacobsen's motion to intervene. The Court also DENIES 4MVR's motion for partial judgment on the pleadings as to Hill's affirmative defenses and DENIES Hill's motion to compel mediation.

## II. Factual Background

The following facts are drawn from the Second Amended Complaint ("SAC"), D. 81, and Hill's third-party complaint, D. 82. 4MVR is a limited liability company that owns the property located at 4 Middle Valley Road in Nantucket. D. 81 ¶ 1. Hill is the principal and sole stockholder of Warren H. Hill Construction Company, Inc. ("Hill Construction") which filed a voluntary petition for Chapter 7 bankruptcy relief. Id. ¶¶ B, 3. The Donald Alan Burns Revocable Trust is the sole member of 4MVR. Id. ¶ 4a.

In 2010, 4MVR solicited bids to build a residence for Burns on the Nantucket property. Id. ¶¶ A, 6. Hill Construction was the low bidder, at just over $22 million, and Burns and Hill

---

[2] Hill seeks to amend his third party complaint to assert two claims against Burns: contribution for misrepresentation and contribution for violations of Mass. Gen. L. c. 93A. D. 150. The Court now denies that motion as futile and thus the Court addresses the third party complaint as originally filed, D. 120. As discussed below, however, the original third party complaint suffers from many of the same infirmities as the proposed amended third party complaint.

2

Construction engaged in negotiations to reach a final contract. Id. ¶ 9, 11. During the negotiations, Burns stressed the importance of Hill Construction having adequate financing to undertake the project. Id. ¶ 12, 15. Although Hill initially told Burns that he did not have sufficient borrowing capability and could not proceed, 4MVR alleges that Hill ultimately told Burns, Hugh Jacobsen, the architect, and others that he had arranged financing sufficient to assume the project. Id. ¶¶ 13, 18-20.

According to 4MVR, Hill made false representations to 4MVR regarding Hill Construction's financial ability to undertake the construction project. Id. ¶ 33. The contract signed by Hill on behalf of Hill Construction indicated that Hill Construction was financially solvent, able to pay its debts, and possessed sufficient working capital to complete the work. Id. ¶ 26. 4MVR alleges that, when Hill Construction entered into the contract with 4MVR, Hill Construction had only $25,000 in available working capital even though Hill knew the project required more than a million dollars. Id. ¶¶ 29, 31. 4MVR further alleges that Hill did not obtain an oral agreement for a personal loan of an additional $400,000 as Hill later represented. Id. ¶¶ 30, 32.

Hill Construction submitted 42 pay applications to 4MVR during the course of the project. Id. ¶¶ 35, 68. On each pay application, Hill certified, on behalf of Hill Construction, that the work covered by the particular application had been completed, that Hill Construction had paid for work by subcontractors for which 4MVR had already issued payment, and that the amount requested was currently due. Id. ¶ 34. 4MVR alleges that some pay applications overstated how much work had in fact been completed, see e.g., id. ¶ 53, and falsely indicated that Hill Construction's subcontractors and suppliers had been paid., see e.g., id. ¶ 61. 4MVR

also asserts that Hill lied about having performed all of the work billed on certain change orders. Id. ¶ 41.

On January 7, 2012, Hill notified 4MVR that Hill Construction required more time and money to complete the construction project. Id. ¶ 70. Hill stated that if Hill Construction and 4MVR could not revise the contract terms, Hill Construction would be forced to repudiate the contract. Id. ¶¶ 69-70. On January 11, 2012, 4MVR terminated the contract. Id. ¶ 73. 4MVR thereafter hired another contractor, Woodmeister, the second lowest bidder originally, to complete the project. Id. ¶¶ 14, 74. 4MVR alleges that it incurred $5.6 million in extra costs to complete the project with Woodmeister plus an additional $50,000 in architect's fees. Id. ¶ 78.

In Count I for misrepresentation, 4MVR alleges that Hill made false statements of material fact regarding Hill Construction's financing to induce 4MVR to award the project to Hill Construction. Id. ¶¶ 81-82. Hill then allegedly delayed telling 4MVR about Hill Construction's deteriorating financial condition in order to obtain progress payments. Id. ¶ 84. Finally, 4MVR alleges that, in certain pay applications, Hill lied about the completion of work, about Hill Construction's payments to subcontractors and suppliers, and about the amounts due. Id. ¶¶ 85-86. In Count II for violations of Mass. Gen. L. c. 93A, § 9 or § 11, 4MVR contends that Hill's misrepresentations constituted unfair and deceptive acts and practices. Id. ¶ 91.

Not surprisingly, Hill's third-party complaint against Burns presents a differing account of the ill-fated relationship between Hill Construction and 4MVR. According to Hill, after Burns implored Hill to accept the contract terms, Burns's own conduct caused the construction project to be delayed and to incur cost overruns. D. 82 at 13 ¶ 1. Hill alleges that Burns refused to provide appropriate architectural plans and measurements for the foundation. Id. He also declined to specify an acceptable window design. Id. Hill further alleges that each application

4

for payment and change order was submitted to Jacobsen, Burns's own agent, for verification and approval. Id. at 19 ¶¶ 36-37. Jacobsen approved the pay applications. Id. Finally, Hill alleges that, during contract negotiations, Burns created an arbitrary deadline to complete a set of secondary structures, including another dwelling, a pool house and a pool. Id. at 16 ¶ 21. Burns, however, never told Hill about the deadline and never provided adequate construction plans. Id. at 16-17 ¶¶ 21-22. Burns also withheld his approval of changes to the architectural plans, delaying the project. Id. at 17 ¶ 26. Although Burns took possession of the secondary structures, Burns refused to pay money then due, thereby endangering Hill's ability to complete the primary project. Id. at 19 ¶ 40. Hill alleges that Burns's failure to cooperate and termination of the contract deprived Hill of more than $2.75 million in profits. Id. at 20 ¶ 41.

In Count I of the third-party complaint, Hill claims that Burns is liable for contribution. Id. at 20 ¶¶ 42-44. Hill's theory is that, to the extent 4MVR has been injured, the damages were caused by Burns's own misrepresentations and misconduct. Id. at 20 ¶ 43. In Count II, Hill contends that Burns's alleged misconduct constitutes unfair or deceptive acts or practices and seeks to recover under Mass. Gen. L. c. 93A, § 11. Id. at 20-21 ¶¶ 45-50. In Count III, Hill claims that Burns made material misrepresentations concerning the architectural plans and concerning payments due to Hill. Id. at 21 ¶ 52. Lastly, in Count IV, Hill alleges that Burns fraudulently induced Hill to enter into the construction contract based on inadequate architectural plans and wrongfully deprived Hill of profits by withholding payments due. Id. at 22 ¶ 57-58.

### III. Procedural History

In 2012, 4MVR asserted claims both against Hill and Hill Construction, D. 1, D. 29. 4MVR's misrepresentation claim was dismissed as to both defendants for failure to state a claim, resulting in Hill's dismissal from the action. D. 50. Hill Construction then answered and

asserted counterclaims. D. 56. 4MVR moved to dismiss, D. 57, but, before the Court entertained the motion, Hill Construction filed a suggestion of bankruptcy, D. 60. Accordingly, the Court dismissed the case without prejudice in March 2013. D. 61.

In September 2013, 4MVR moved to reopen the case and file another complaint against Hill individually. D. 62. The Court granted the motion, also ruling that 4MVR set forth a plausible misrepresentation claim alleged with sufficient particularity. D. 74. 4MVR filed the SAC now before the Court on January 16, 2014. D. 81. On August 22, 2014, Hill moved to compel mediation in conjunction with a motion to consolidate cases, the latter of which was denied by the Court. D. 115, 149. Burns subsequently moved for judgment on the pleadings with respect the third-party claims, D. 120, and 4MVR moved for partial judgment on the pleadings and to dismiss Hill's affirmative defenses. D. 123. The Court heard the parties on all the pending motions and took these matters under advisement. D. 148. Before the Court issued an order on Burns's motion regarding the third-party claims, Hill moved for leave to amend his third-party complaint. D. 150. The Court addresses all of these pending motions below.

**IV. Discussion**

    **A.**     <u>Hill's Motion to Amend the Third Party Complaint is Denied</u>

        *1.*     *Standard of Review*

Under Fed. R. Civ. P. 15(a), leave to amend prior to trial will be "freely" given "when justice so requires." "The leave sought should be granted unless the amendment would be futile or reward undue delay." <u>Abraham v. Woods Hole Oceanographic Inst.</u>, 553 F.3d 114, 117 (1st Cir. 2009). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." <u>Boston & Me. Corp. v. Town of Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993),

6

overruled on other grounds by Educadores, Puertorriqueños en Acción v. Hernandez, 377 F.3d 61 (1st Cir. 2004). Additional reasons for denial include undue delay, prejudice, bad faith or dilatory motive on the part of the moving party and repeated failure to cure deficiencies with previous amendments. Foman v. Davis, 371 U.S. 178, 182 (1962). If an amendment seeks to add a new party without significant disruption to the litigation, "the new parties should be joined so as to resolve the entire dispute." Pray v. SM PO Props., Inc., 746 F. Supp. 2d 317, 324 (D. Mass. 2010). An amended complaint fails to state a claim, and is thus futile, if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## 2. *Hill's claims against Burns are futile*

The primary claim Hill seeks to assert against Burns is for contribution for misrepresentation. D. 150-1 ¶¶ 61-65. Specifically, Hill alleges that, to the extent he made misrepresentations to 4MVR regarding Hill Construction's financing arrangements, Burns "knew of and acquiesced to those misrepresentations and made the same misrepresentations to 4MVR." Id. ¶ 61. Hill argues that, prior to the execution of the construction contract, Burns knew that Hill could not obtain a line of credit. Id. ¶ 25. Similarly, Hill alleges that if Hill made misrepresentations of material fact to 4MVR on the pay applications submitted to 4MVR through Burns, then so did Jacobsen and Burns. Id. ¶ 62. Hill's Chapter 93A claim is premised on the same conduct. Id. ¶ 68 (stating that "Burns' and Jacobsen's conduct described above constitutes unfair and/or deceptive acts and/or practices within the meaning of M.G.L. c. 93A").

The problem with Hill's theory is that 4MVR, although legally distinct from Burns, is factually nearly one and the same. 4MVR is a limited liability company with a single member, the Donald Alan Burns Revocable Trust. It does not appear that either party asserts that Burns

7

was not the principal manager of 4MVR. There exists a right of contribution among joint tortfeasors "where two or more persons become jointly liable in tort for the same injury to person or property." Mass. Gen. L. c. 231B, § 1(a). "The language of this statute requires that the potential contributor be directly liable to the plaintiff." Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978).

Hill has failed to demonstrate how Burns, the potential contributor, can be directly liable to 4MVR where 4MVR is, in essence, Burns himself. Hill has cited no case, and the Court has yet to discover one, where the sole owner and manager of a single member limited liability company ("LLC") has been found to be liable to the LLC. Instead, courts in other contexts have acknowledged that single member LLCs are only slightly factually different from their sole members. See In re Lemay, No. 13-10999-BAH, 2014 WL 4690862, at *5 (Bankr. D.N.H. Sep. 19, 2014) (unpublished opinion) (holding that assignment of a lease from a sole member of an LLC to the LLC did not defeat plaintiff's reliance on the member's representations and stating that the court "acknowledge[d] the legal distinction" between the member and the LLC but noted that "the factual difference between the two is slight"); Centrix Bank & Trust v. Kehl, 40 A.3d 942, 943 & n.1 (Me. 2012) (treating sole owner and member of LLCs as property owner even though properties at issue were technically owned by LLCs).

Moreover, Hill cannot demonstrate that he can prove all the elements required to support a claim for misrepresentation. Such a claim requires allegations showing that Burns "'made a false representation of material fact with knowledge of its falsity for the purpose of inducing [4MVR] to act thereon, and that [4MVR] reasonably relied upon the representation as true and acted upon it to [its] damage.'" Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). 4MVR,

8

embodied by Burns, cannot reasonably rely upon a misrepresentation made by Burns. Hill in essence contends that Burns told himself a series of lies (that Hill Construction had financing and that the pay applications were accurate) and that Burns reasonably relied on those lies to his detriment. Such a scenario is a logical impossibility because one cannot reasonably rely on a misrepresentation made to one's self.

Hill nonetheless argues that Burns did not lie to Burns, but to 4MVR, "a corporate entity that is separate and distinct from Burns himself." D. 166 at 2. While technically true that Burns and 4MVR are legally distinct, Burns would still have to lie to a representative of 4MVR because lying to a corporate entity can be accomplished only by way of a person who acts under the auspices of that entity. In this case, the relevant person is Burns, thereby making Hill's allegations dependent upon an impossible scenario -- that Burns reasonably relied on a statement he knew to be false.

Hill's claim for contribution for misrepresentation fails against Burns because he has not shown that Burns can be directly liable to 4MVR. Hill's claim for contribution for violations of Chapter 93A suffers from the same defects. Hill does not explain how Burns could engage in conduct that deceived himself or was unfair to himself, as the actor through which 4MVR operated. Both claims asserted against Burns thus are futile and the Court, therefore, declines to grant leave to amend.

### 3. *Hill's claims against Jacobsen are untimely*

The original complaint in this action was filed on April 16, 2012. D. 1. Hill brought his third party complaint against Burns on February 14, 2014 in answer to the SAC. D. 82. His motion for leave to amend the third party complaint to add Jacobsen was not filed until December 19, 2014, D. 150, more than two years after the initiation of this action and more than

ten months after his initial third party complaint. "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay." In re Lombardo, 755 F.3d 1, 3 (1st Cir. 2014) (internal alterations and quotation marks omitted). Delays of fourteen, fifteen and seventeen months have been held to be considerable enough to warrant an explanation. Id. at 3-4 (noting cases).

Hill disputes that his motion was unduly delayed, noting that he filed the motion prior to the deadline for amendments, before any trial date was set and months before the close of discovery. D. 151 at 3-4. He asserts that little new discovery will be required given that Jacobsen has already produced the relevant documents in its possession. Id. at 5. In addition, Hill contends that he had valid reasons for the timing of his motion, noting that Jacobsen's document production, in response to Hill's August 2014 subpoena, was not complete until early October 2014, just over two months prior to Hill's amended third party complaint. D. 166 at 5. Moreover, Hill argues that he prudently sought confirmation from the bankruptcy court that the amended complaint would not violate the stay. Id. The bankruptcy court's order providing relief from the stay preceded the amended third party complaint by one day. Id. at 5-6.

"[I]n assessing whether delay is undue, a court will take account of what the movant 'knew or should have known and what he did or should have done.'" Lombardo, 755 F.3d at 3-4 (quoting Invest Almaz v. Temple-Inland Forest Prods. Corp, 243 F.3d 57, 72 (1st Cir. 2001)). In particular, where, as here, the moving party seeks to add new parties, Local Rule 15.1 requires that "[a]mendments adding parties shall be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party." Here, as indicated by Hill's motion to dismiss the original complaint filed in August 2012, D. 31, he was well aware of

Jacobsen's identity and role from the outset, yet inexplicably waited until December 2014 before attempting to implead Jacobsen. See D. 31; D. 82 (initial third party complaint) at 16 ¶ 18 (alleging Jacobsen knew architectural plans were incomplete), at 19 ¶ 36 (alleging Jacobsen was required to verify information on pay applications submitted by Hill Construction), at 10 (asserting affirmative defense of comparative fault on the part of Jacobsen).

Although Hill points to discovery as a factor contributing to the delay in adding Jacobsen as a third party defendant, he does not indicate any information uncovered during discovery that revealed the presence of his claims with respect to Jacobsen. See Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979) (holding that appellant did not meet burden of showing valid reason for delay where there was no indication "that discovery led to previously unknown facts which altered the shape of his case"). On the contrary, it is clear from his initial third party complaint that Hill was well aware of Jacobsen's involvement throughout the disputed bidding and construction process. See D. 82 at 15 ¶ 14 (stating that bidding process began with a meeting that included Hill, Burns and Hugh Jacobsen).

Hill also relies upon seeking the permission of the bankruptcy court to assert claims against Burns and Jacobsen as part of the reason for his delay in bringing his third-party complaint. Specifically, Hill states that his motion for relief from the stay was necessitated by an adversary proceeding filed by the bankruptcy trustee against Hill alleging that Hill's claims against Burns violated the stay. See D. 158 at 6 n.1. Hill notes that the complaint was dismissed, thereby allowing his claims against Burns to proceed. Id. Hill, however, has not explained how the adversary proceeding implicated any of his claims against Jacobsen. Moreover, the timing of such action also does not explain the prior passage of time before he

11

sought such permission from the bankruptcy court. The Court, therefore, denies Hill's motion for leave to amend with respect to his claims against Jacobsen.[3]

### B. Burns's motion for judgment on the pleadings with respect to the third-party claims

Burns moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) with respect to Hill's third-party claims, D. 120. Although a motion under Rule 12(c) differs from a Rule 12(b)(6) motion in that it is filed after the close of pleadings and implicates the pleadings as a whole, motions under both rules are governed by the same standard.[4] Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To state a plausible claim, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not

---

[3] Jacobsen has moved to intervene to oppose Hill's motion for leave to amend. D. 153. Because the Court denies Hill's motion for leave to amend, it also denies Jacobsen's motion to intervene as moot.

[4] At the time of filing, Burn's motion under Fed. R. P. 12(c) was premature given that the deadline to amend pleadings had not passed. D. 132.

demand 'a high degree of factual specificity.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations omitted).

Hill's claim for contribution is premised on the notion that, if Hill is found to have made misrepresentations to 4MVR, then Burns should be liable to the extent that Burns's own misconduct contributed to 4MVR's damages. D. 130 at 5. Hill argues that, prior to the execution of the construction contract, Burns knew that Hill could not obtain a line of credit. Id. at 6. If Hill is liable for any misrepresentations concerning Hill Construction's access to financing, Hill argues that Burns is also liable for making comparable misrepresentations to 4MVR because Burns knew that neither Hill Construction nor Hill had secured a line of credit. Id.

The difficulties with this theory have already been discussed *supra* in section IV.A.2. In short, the Court concludes that the contribution claim is not viable because it turns upon the notion that Burns made misrepresentations to himself, as the actor through which 4MVR operates. Although 4MVR is a legally distinct entity from Burns, they are factually nearly one and the same. Reasonable reliance, a required element of a misrepresentation claim, cannot be demonstrated where the person making the alleged misrepresentation is also the person relying on the same misrepresentation.

Hill's remaining claims, for misrepresentation, fraud and violation of Chapter 93A, all rely on Hill's standing, as an individual, to assert those claims against Burns. The burden of demonstrating standing belongs to the party seeking invoke the Court's jurisdiction. See Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 104 (1st Cir. 1995). "Prudential considerations require a plaintiff to show that his claim is premised on his own legal rights rather than those of a third party." Kerr v. Vince, No. 07-30021-MBB, 2010 WL 1416511, at *9 (D.

Mass. Apr. 1, 2010). "Normally . . . a mere shareholder, officer, director or member does not have standing to assert a claim on behalf of a business entity." Laverty v. Massad, 661 F. Supp. 2d 55, 61 (D. Mass. 2009). This means that when the alleged misconduct results in an injury to a corporation, a shareholder cannot sue in his own name to redress those injuries, even when the corporation has only one shareholder. Id. at 62; see Farragut Mortgage Co. v. Arthur Andersen LLP, No. 95-6231-B, 1999 WL 823656, at *17 (Mass. Super. Aug. 5, 1999) (noting that principles of corporate law provide that a shareholder may not sue a wrongdoer if the alleged injury is a reduction in the corporation's net worth because the corporation is the injured party and "it alone may sue the wrongdoer for the damage caused").

In the present case, the claims asserted by Hill are derivative of Hill Construction's claims and, therefore, Hill lacks standing to assert them in his own name. Hill's misrepresentation claim is based on false statements allegedly made by Burns concerning the architectural plans and payments contemplated by the construction contract. Hill's allegations state that Burns made misrepresentations "concerning the architectural plans provided to Hill" and concerning "payments due to Hill." D. 82 ¶ 52. However, the construction contract was not between 4MVR or Burns and Hill but between 4MVR and Hill Construction. Plans were to be provided to Hill Construction and payments were due to Hill Construction. The harm inflicted by any deficiencies in either was sustained by Hill Construction, not by Hill.

The fraud claim similarly purports to focus on Hill, stating that "Burns fraudulently induced Hill to enter into the contract." Id. ¶ 57. Again, the contract was entered into by Hill Construction, not by Hill. It was Hill Construction, not Hill, who was deprived of profits as a result of Burns's alleged actions. The injury alleged was an injury to Hill Construction, and thus any claims to redress the injury belong solely to Hill Construction. Because the Chapter 93A

14

claim centers on the same alleged misconduct, it is merely derivative of the misrepresentation and fraud claims. The underlying claims fail, so the Chapter 93A claim does too.

### C. 4MVR's motion for partial judgment on the pleadings and to dismiss Hill's affirmative defenses

4MVR moves for partial judgment on the pleadings with respect to some of Hill's affirmative defenses pursuant to Fed. R. Civ. P. 12(c). D. 123. 4MVR asserts that twenty of the affirmative defenses maintained by Hill are legally insufficient, redundant, immaterial or impertinent. D. 124. Out of an abundance of caution, the Court will treat the motion as an untimely motion to strike pursuant to Fed. R. Civ. P. 12(f) because of the more lenient standard applied under that rule. See Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 893 (D. Me. 1992) (noting that the authority conferred by Rule 12(f) to strike insufficient defenses on the court's own initiative permits the court to consider untimely motions to strike). Courts do not "view motions to strike affirmative defenses for legal insufficiency under Rule 12(f) favorably." Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 39 (D. Mass. 1991). "'The general policy is that the pleadings should be treated liberally, and that a party should have the opportunity to support his contentions at trial.'" Id. (quoting Bennett v. Spoor Behrins Campbell & Young, Inc., 124 F.R.D. 562, 563 (S.D.N.Y. 1989). Such motions "should be granted only when it is beyond cavil that the defendant could not prevail on them." Honeywell Consumer Prods., Inc. v. Windmere Corp., 993 F. Supp. 22, 24, (D. Mass. 1998) (internal quotation marks and alterations omitted).

A motion to strike is normally subject to a 21-day limitation following service of the relevant pleading on the moving party. Fed. R. Civ. P. 12(f). The Court is reluctant to override that limitation in the absence of any suggestion on the part of 4MVR that the presence of the affirmative defenses broadens discovery that has been or will be taken. See Fantasy, Inc. v.

15

Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (noting that the purpose of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues"); Banks v. Realty Mgmt. Serv., Inc., No. 1:10cv14, 2010 WL 420037, at * 1 (E.D. Va. Jan. 29, 2010) (stating that motions to strike affirmative defenses are often disallowed even if appropriate on the merits in the absence of a showing of prejudice to the moving party). Moreover, while a plaintiff has some luxury of time to formulate his complaint, a defendant must provide his answer, including affirmative defenses, within twenty-one days. See Traincroft, Inc. v. Ins. Co. of Pa., No. 14-10551-FDS, 2014 WL 2865907, at * 3 (D. Mass. June 23, 2014) (declining to extend Iqbal and Twombly standards to affirmative defenses and observing that "it might be unfair to require that defendants set forth within 21 days the same level of detail that plaintiffs have amassed during an entire limitations period"). A defendant understandably seeks to assert all conceivable affirmative defenses given his limited opportunity for investigation. The untimely nature of 4MVR's motion and the lack of prejudice to it during the discovery process compel the Court to deny its motion.

### D. Hill's motion to compel mediation

Hill urges the Court to order the parties to engage in mediation because he has "limited means" and because it "would greatly assist the parties in resolving their differences, or at least in narrowing their disputes." D. 115 at 8. 4MVR counters that, without significant discovery, neither party can make informed decisions in mediation. D. 117 at 5. As the Court stated at the hearing on these motions, the absence of interest in mediation by all parties and the status of discovery do not compel the Court to require mediation at this juncture. Accordingly, the motion to compel mediation is denied.

### V. Conclusion

For the foregoing reasons, the Court ALLOWS 4MVR's motion for judgment on the pleadings with respect to the third-party claims, D. 120, and DENIES Hill's motion for leave to amend the third party complaint, D. 150.  The Court also DENIES as moot Jacobsen's motion to intervene, D. 153.  The Court DENIES 4MVR's motion for partial judgment on the pleadings with respect to affirmative defenses, D. 123.  The Court DENIES Hill's motion to compel arbitration, D. 115.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge