# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| 4 MVR, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-10674-DJC** |
| ) | |
| WARREN W. HILL CONSTRUCTION ) | |
| COMPANY, INC. and ) | |
| WARREN W. HILL, ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                      **September 13, 2016**

## I.    Introduction

Plaintiff 4 MVR, LLC ("4 MVR") brought this action relating to the construction of a residence in Nantucket, Massachusetts against defendants Warren W. Hill ("Hill") and Warren W. Hill Construction Company, Inc. ("Hill Construction").  4 MVR has moved for summary judgment.  D. 232; D. 240.  Hill also moves for summary judgment.  D. 234; D. 276.  Hill moves to strike certain materials 4 MVR submitted in support of its motion for summary judgment.  D. 249; D. 259; D. 262; D. 303.  4 MVR moves to strike certain materials Hill submitted in support of his motion for summary judgment.  D. 288; D. 295.  For the reasons stated below, the Court DENIES in part and ALLOWS in part Hill's motion for summary judgment.  The Court DENIES in part and ALLOWS in part 4 MVR's motion for summary judgment.  The Court DENIES the various motions to strike.

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000).  If the movant meets its burden, the non-moving party may not rest upon the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citation omitted).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (quoting Anderson, 477 U.S. at 249) (alteration in original).

## III.   Factual Background

Unless otherwise noted, the following facts are undisputed and drawn from the parties' various statements of fact.  D. 239; D. 254; D. 279; D. 283; D. 287; D. 299; D. 300.  Hill began building houses on Nantucket in 1976.  D. 239 ¶¶ 20-21; D. 283 ¶¶ 20-21.  In 1982, Hill formed Hill Construction and began working on commercial and residential construction projects.  D. 239 ¶ 24; D. 254 ¶ 5; D. 283 ¶ 24.

4 MVR is a limited liability company that owns the property located at 4 Middle Valley Road in Nantucket (the "Property").  D. 239 ¶ 1; D. 254 ¶ 1; D. 283 ¶ 1.  Donald A. Burns ("Burns") controls 4 MVR and 4 MVR's sole member is the Donald Alan Burns Revocable Trust, a trust that was established by Burns.  D. 239 ¶¶ 2, 4-6; D. 287 ¶ 2; D. 283 ¶¶ 2, 4-6.

In 2010, 4 MVR solicited bids to build a residence for Burns on the Property (the "Project").  D. 239 ¶¶ 59-61, 86-91; D. 254 ¶¶ 7, 12-14; D. 283 ¶¶ 59-61.  After reviewing

contractors, Burns identified four contractors, including Hill Construction, he deemed qualified to bid on the Project. D. 239 ¶ 65; D. 283 ¶ 65. On February 1, 2010, Hill Construction submitted a bid in the amount of $22,751,741. D. 239 ¶ 86; D. 254 ¶ 12; D. 283 ¶ 86. On that same day, Hill Construction's bid was accepted by 4 MVR as the lowest bid. D. 239 ¶ 88; D. 283 ¶ 88.

4 MVR and Hill Construction thereafter engaged in contract negotiations. D. 239 ¶¶ 99-184; D. 254 ¶¶ 14-16; D. 283 ¶¶ 99-184. 4 MVR and Hill Construction were both represented by counsel during their negotiations. D. 239 ¶¶ 79, 99-103; D. 254 ¶ 22; D. 283 ¶¶ 79, 99-104, 165. Burns was involved with the negotiations on behalf of 4 MVR and representatives from the architecture firm on the Project, Jacobsen Architecture LLC – including Heidi Leinbach ("Leinbach"), Hugh Newell Jacobsen ("Hugh Jacobsen") and Simon Jacobsen – assisted with awarding and finalizing 4 MVR's contract with Hill Construction. D. 239 ¶¶ 36-38, 46, 48, 94-97, 102, 104; D. 283 ¶¶ 36-38, 46, 48, 94-97, 102, 104. Hill was involved in the negotiations on behalf of Hill Construction. D. 239 ¶ 95, 110-111; D. 283 ¶ 95, 110-111. During the negotiations, 4 MVR and Hill Construction discussed, *inter alia*, sources of funding available to Hill Construction, D. 239 ¶¶ 113-116; D. 254 ¶¶ 16, 31, 71; D. 283 ¶¶ 113-116, and methods and requirements for handling the applications for payment Hill Construction periodically submitted to 4 MVR for work completed ("Pay Application"). D. 239 ¶¶ 160-162, 165; D. 283 ¶¶ 160-162, 165.

At some point during the negotiations between 4 MVR and Hill Construction, 4 MVR attempted negotiations with the second lowest bidder, Woodmeister. D. 239 ¶ 133; D. 254 ¶ 48. The negotiations between Woodmeister and 4 MVR, however, were ultimately terminated and 4 MVR elected to revisit negotiations with Hill Construction. D. 239 ¶¶ 155-157; D. 254 ¶¶ 77, 79; D. 283 ¶¶ 155-157.

On or about February 20, 2010, Hill Construction and 4 MVR executed the contract governing the Project.  D. 239 ¶¶ 78, 105, 185; D. 254 ¶¶ 21, 23-24.  The contract consisted of modified versions of AIA Document A101-2007 (the "Agreement") and AIA Document A201-2007 (the "General Conditions") (collectively, the "Contract").  D. 239 ¶¶ 78, 105, 188; D. 254 ¶ 21.  The Contract was a fixed price contract whereby the Project was to be completed for a pre-determined lump sum price plus any change orders.  D. 239 ¶¶ 84-85; D. 254 ¶¶ 20, 25; D. 283 ¶¶ 84, 85.  The Contract sum was for the stipulated amount of $22,751,741.  D. 239 ¶ 186; D. 283 ¶ 186.  Pursuant to a contract between 4 MVR and Jacobsen, Jacobsen's responsibilities during the Project included providing administration of the Contract, visiting the construction site, informing 4 MVR as to the progress of the Project and reviewing and certifying Pay Applications.  D. 239 ¶ 39; D. 283 ¶ 39.

Over the course of the Project, Hill Construction submitted 42 Pay Applications for work performed and 4 MVR paid certain of the Pay Applications that Hill Construction submitted.  D. 239 ¶¶ 220, 324, 326-327; D. 254 ¶¶ 186-188, 267-270.  The Project ultimately experienced delays and was expected to exceed the initially agreed upon budget.  D. 239 ¶ 375-376, 384-385; D. 254 ¶¶ 297, 302-303; D. 283 ¶¶ 375-376.  On January 11, 2012, 4 MVR terminated the contract with Hill Construction.  D. 239 ¶ 397; D. 254 ¶ 317; D. 283 ¶ 397.  4 MVR then hired Woodmeister to complete the Project.  D. 239 ¶ 399; D. 254 ¶ 319; D. 283 ¶ 399.

## IV.    Procedural History

On April 16, 2012, 4 MVR instituted this action against Hill and Hill Construction.  D. 1.  In its amended complaint, 4 MVR asserted claims for breach of contract, breach of express and implied warranty and breach of fiduciary duty against Hill Construction.  D. 29 at 1.  In its amended complaint, 4 MVR asserted a claim against Hill for misrepresentation.  Id.  On January 25, 2013, the Court granted Hill's motion to dismiss 4 MVR's misrepresentation claim.  D. 50.  On March

18, 2013, Hill Construction filed a suggestion of bankruptcy with this Court.  D. 60; D. 254 ¶ 320.

On March 20, 2013, the Court dismissed this action without prejudice to allow for proceedings in

bankruptcy court.  D. 61.

On January 15, 2014, the Court granted 4 MVR's motion to reopen this action only as

against Hill.  D. 74.  In reopening this action, the Court permitted 4 MVR to file an amended

complaint asserting a claim for misrepresentation and a claim for violation of Mass. Gen. L. c.

93A against Hill.  Id.  On January 16, 2014, 4 MVR filed its second amended complaint.  D. 81.

Hill, in turn, asserted in its answer a counterclaim against 4 MVR for breach of contract and third

party claims against Burns for contribution, violation of Mass. Gen. L. c. 93A, misrepresentation,

fraud and breach of contract.  D. 82 at 20-22.  Hill's claims for breach of contract were dismissed

pursuant to an assented to motion.  D. 114.  On June 24, 2015, the Court allowed 4 MVR's motion

for judgment on the pleadings seeking dismissal of Hill's third party claims against Burns for

contribution, violation of Mass. Gen. L. c. 93A, misrepresentation and fraud.  D. 194.  Thus, at

this juncture in the litigation, only 4 MVR's claims for misrepresentation and violation of Mass.

Gen. L. c. 93A against Hill remain.[1]

4 MVR moves for summary judgment on all of these claims.  D. 232; D. 240.[2]  Hill moves

for summary judgment on the same claims.  D. 234.  The parties seek to strike certain of the other

---

[1]  Although 4 MVR expressly "reserves its right to the intentional misrepresentation claims on which it has not moved for summary judgment," D. 301 at 14 n.12, it is not clear what intentional misrepresentation claims 4 MVR intends to reserve that were not the subject of the pending cross motions for summary judgment and the Court does not perceive any such remaining claims.

[2]  Although 4 MVR filed two motions for summary judgment, they appear to be duplicative filings. Both motions assert that 4 MVR is entitled to summary judgment on 4 MVR's misrepresentation and c. 93A claims.  D. 232; D. 240.  Thus, in considering 4 MVR's motion for summary judgment, the Court considers D. 232 and D. 240 to be duplicative filings.  For the sake of efficiency, the Court cites to 4 MVR's motion for summary judgment as it appears in D. 232 and 4 MVR's memorandum of law in support as it appears in D. 253.

party's filings, D. 249, 259, 262, 288, 295, 303, which the Court addresses below.  The Court heard

the parties on the pending motions and took these matters under advisement.  D. 293.

## V.    Motions to Strike

### A.    Hill's Motion to Strike "New Allegations Outside the Complaint" Is Denied

Hill seeks to strike certain of 4 MVR's allegations as "new fraud allegations."  D. 262; D.

263 at 1.

#### 1.    The Allegations at Issue

First, Hill contends that the following allegations relating to Pay Applications that appear

in 4 MVR's summary judgment motion were not asserted in 4 MVR's second amended complaint:

(1) 4 MVR's allegation that Hill made false representations relating to retainage paid to

subcontractors for Line Items #33 (cabinet hardware) and #42 (tile & tile floors); (2) 4 MVR's

allegation that Hill made false representations regarding the percentage of work completed on the

Project and that the work was completed in accordance with the Contract as it related to the tile

installation completed by Stephen Silverio Tile ("Silverio Tile"); and (3) 4 MVR's allegation that

Hill's representation that work was completed in accordance with the Contract was false because

Hill executed subcontracts that did not incorporate the Contract's material terms.  D. 262 at 2-3;

D. 263 at 3; D. 275-1 at 5-12.   Second, Hill concedes that 4 MVR's allegation that Hill

misrepresented Hill Construction's solvency was asserted in 4 MVR's first amended complaint.

D. 263 at 4-5.  Nonetheless, Hill contends that the insolvency allegation must be stricken because

it was not re-pleaded in 4 MVR's second amended complaint.   Id.

#### 2.    The Standard for Amending Pleadings Post-Discovery

Hill argues that 4 MVR was obligated to amend its complaint before pursuing summary

judgment on these "unpleaded" claims.  Id. at 3; D. 275-1 at 14.  In asserting this argument, Hill

relies upon Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v.

Juarbe-Jimenez, 659 F.3d 42, 53 (1st Cir. 2011).  In Asociacion, the plaintiff represented up until summary judgment that it was challenging the insurance commissioner's regulations as unconstitutional "on their face."  Asociacion, 659 F.3d at 53.  The plaintiff represented that it was not asserting an as-applied constitutional challenge.  Id.  When the defendant moved for summary judgment on the facial challenge, however, the plaintiff asserted for the first time in its opposition an as-applied challenge.  Id.  Thus, as the court explained, the plaintiff impermissibly sought to assert a new legal theory of recovery and struck the unpleaded theory of recovery.  Id.

Unlike Asociacion, 4 MVR has added factual detail to an already asserted claim without asserting a new claim or theory of recovery.  "The federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process."  Ash v. Wallenmeyer, 879 F.2d 272, 274 (7th Cir. 1989); Umar v. Johnson, 173 F.R.D. 494, 503 (N.D. Ill. 1997) (explaining that "nothing in federal procedure compels a plaintiff to amend the complaint as discovery unfolds") (citation omitted).  Moreover, with fraud claims, where the volume of misrepresentations at issue is potentially substantial, the fraud pleading requirements are satisfied so long as pled with particularity under Fed. R. Civ. P. 9(b), D. 50 at 8 and cases cited, and where the fraud claim alleges numerous transactions over time, Rule 9(b) will still be satisfied if "the complaint alleges the basic framework, procedures, and the nature of fraudulent scheme that give rise to [the] belief" that misrepresentations occurred.  In re Pharm. Indus. Average Wholesale Price Litig., 478 F. Supp. 2d 164, 172 (D. Mass. 2007) (citing U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998)).

### 3. 4 MVR's Allegations Regarding Statements on Pay Applications Submitted to 4 MVR Do Not Amount to an Impermissible New Claim or Theory of Recovery

Hill is not entitled to have the following allegations stricken from the record:  (1) 4 MVR's allegation that Hill made false representations on Pay Applications relating to retainage paid to subcontractors for Line Items #33 (cabinet hardware) and #42 (tile & tile floors); (2) 4 MVR's allegation that Hill made false representations on Pay Applications regarding the percentage of work completed on the Project and that the work was completed in accordance with the Contract as it related to the Silverio Tile; and (3) 4 MVR's allegation that Hill's representation on Pay Applications that work was completed in accordance with the Contract was false because the subcontracts did not incorporate the terms of the Contract as was required.  As an initial matter, 4 MVR's misrepresentation claims have been central to this litigation from the outset.  See, e.g., D. 1 ¶¶ 58-66; 4 MVR, LLC v. Warren W. Hill Const. Co., No. 12-cv-10674-DJC, 2015 WL 3932380, at *1 (D. Mass. June 26, 2015) (stating that "this is a fraud and deceptive business practices suit"). The second amended complaint contains specific allegations that provided Hill adequate notice that 4 MVR's misrepresentation claims involved statements on Pay Applications and Hill's alleged failure to strictly to comply with the Contract in submitting Pay Applications.  D. 81.

For example, in the second amended complaint, 4 MVR asserts that "[i]n connection with each [Pay Application] [Hill Construction] submitted for the Project, Hill certified on behalf of [Hill Construction], that, among other things, 'the Work covered by [that] Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were raised and payments received from [4 MVR], and that the current payment here [was] now due." D. 81 ¶ 34.  4 MVR further alleged that it reasonably relied upon those representations in the Pay Applications in issuing payments to Hill Construction.  Id. ¶ 35.  4 MVR also asserted that "[a]s a result of Hill's overbilling the Project and collecting payment from [4 MVR] for work that Hill misrepresented

had been completed, [4 MVR] suffered damages."[3]   Id. ¶ 42.   Still more, the second amended

complaint provides a non-exhaustive list of "example[s]" of Hill allegedly overbilling,

misrepresenting the amount of work completed and misrepresenting retainage.   Id. ¶¶ 56-65.

In all of these ways, 4 MVR's allegations in the second amended complaint properly pled

these claims and put Hill on notice that 4 MVR's misrepresentation claim related to, *inter alia*,

Hill Construction's billing practices, including but not limited to representations made regarding

work completed on the Project.   Hill received adequate notice of the three billing related allegations

that Hill now challenges not only through the operative pleadings.

Because the core of the allegations at issue were asserted in the second amended complaint,

4 MVR was permitted to elaborate upon those allegations based upon information it obtained

during discovery.   See Ash, 879 F.2d at 274 (concluding that plaintiff could recover for

underbilling claim even though plaintiff did not formally amend the pleadings after learning of the

potential for underbilling-based damages during discovery).   To the extent that the allegations Hill

challenges contain new details, given the substantial overlap with the allegations contained in the

second amended complaint, the new details are properly narrow and drawn from information

disclosed to both parties during discovery.   For example, during discovery a Rule 30(b)(6)

deposition was taken of Stephen Silverio.   Hill's RA, Tab 45, Silverio Dep. Sep. 23, 2015; 4

MVR's RA, Tab 53, Silverio Dep. Sep. 23, 2015.[4]   4 MVR represents that this deposition provided

---

[3] In fact, 4 MVR made specific mention of Silverio Tile in the second amended complaint, alleging
that "Hill overbilled on the certain tile scope of work performed by Silverio Tile."   Id. ¶ 60.

[4]   On November 19, 2015, 4 MVR's hardcopy record appendix ("4 MVR's RA") was filed with
this Court's clerk office.   D. 246.   4 MVR's RA consists of four bound volumes and could not be
scanned.   Id.   Similarly, Hill filed a hardcopy record appendix ("Hill's RA").   D. 239-1.   Hill's RA
is composed of a single voluminous binder and could not be scanned.   Id.   Neither party filed their
records electronically.   Accordingly, the Court cites to both parties' hardcopy record appendices as
they were was filed with the clerk's office.   Both parties organizes the documents in the record by
tab.   As such, in the citations, the Court notes the tab number and, where available, the exhibit

4 MVR additional information to clarify its already pleaded misrepresentation allegations regarding overbilling to identify the work Silverio completed on tiles.  D. 271 at 8.  Such elaborations of particular instances of overbilling do not amount to new claims and are, therefore, permissible without formal amendment to the pleadings.  See Umar v. Johnson, 173 F.R.D. 494, 503 (N.D. Ill. 1997) (declining to dismiss claim at summary judgment as unpleaded where "the recasting of the [plaintiffs'] claim [was] an eminently reasonable adjustment necessary to state that claim properly, in light of the evidence uncovered during discovery").  For all of these reasons, 4 MVR's motion to strike these allegations is denied.

### 4.    4 MVR's Allegation that Hill Misrepresented Hill Construction's Insolvency Was Pled

Hill's argument for striking 4 MVR's claim that Hill made false representations regarding Hill Construction's solvency fails because that allegation is expressly asserted in the second amended complaint.  Paragraph 26 of the complaint alleges that Hill, on behalf of Hill Construction, made the "express representation[] and warrant[y]" that "[Hill Construction] is financially solvent, able to pay all its debts as they mature and possessed of sufficient working capital to complete the Work and perform all obligations hereunder." [5]  D. 81¶ 26.  The second amended complaint also references Hill Construction's alleged insolvency and representations regarding the same where it is alleged that "[h]ad [4 MVR] known the truth about [Hill Construction's] financial difficulties earlier and had Hill not concealed the full extent of [Hill Construction's] financial distress for a period of months, [4 MVR] could have taken action sooner

---

number and bates number of the document cited.  Where a document cited by the Court appears in both 4 MVR and Hill's RAs, the Court cites to both parties' RAs.

[5]  Indeed, 4 MVR's second amended complaint casts Hill's alleged statements regarding Hill Construction's solvency as one of the "express representations and warranties" Hill made "[u]pon execution of the Contract."  Id. (emphasis from original removed).

to minimize its losses." Id. ¶ 76.  4 MVR also asserts in the second amended complaint that Hill's representation regarding Hill Construction's solvency was material to 4 MVR's decision to enter into the Contract.  Id. ¶¶ 27, 76.  Thus, 4 MVR's claim that Hill misrepresented Hill Construction's solvency is contained in the second amended complaint and 4 MVR cannot claim lack of notice. Indeed, Hill acknowledged in its opposition to 4 MVR's third motion to compel document production that Hill Construction's financial condition and insolvency and Hill's representations relating to the same were central to this case.  D. 172 at 2-4.  Accordingly, 4 MVR's motion to strike this allegation is denied.

### 5.      Hill Has Not Demonstrated Any Specific Prejudice

Moreover, striking the allegations is unwarranted because Hill has not shown, contrary to his suggestion otherwise, D. 275-1 at 16-17, prejudice he has suffered.  Indisputably, the issues of Hill Construction's financial status, insolvency and billing practices have been central to this case. See, e.g., D. 81 ¶¶ 26-27, 34-35, 56-65, 76.  These topics were explored during discovery.  See, e.g., Hill's RA, Tab 45, Silverio Dep. Sep. 23, 2015; 4 MVR's RA, Tab 53, Silverio Dep. Sep. 23, 2015; D. 266-1 at 165; Hill's RA, Tab 3, Hill Dep. at 145:1-156:6; 4 MVR's RA, Tab 4, Hill Dep. at 127: 3-24, 139: 16-144: 22, Sept. 15, 2015.  Hill has pointed to no litigation strategy he would have employed, no deposition he would have taken and no particular documents he would have sought during discovery had he been even more explicitly warned of these specific iterations of 4 MVR's alleged misrepresentation claim.  Here, "dismissal—the practical effect of the . . . refusal to allow [4 MVR] to prove [its claims] – [is] too harsh a sanction for a harmless error (if error it was)."  Ash, 879 F.2d at 274-75.  For all of these reasons, Hill's motion to strike is denied.

### B.      Hill's Motion to Strike Larry Schaedel's Affidavit Is Denied

Hill seeks to strike the affidavit of Larry Schaedel ("Schaedel") on the grounds that 4 MVR violated its duty under Fed. R. Civ. P. 26(a)(1)(e) to disclose Schaedel as an expert witness.  D. 249; D. 250 at 1; D. 268-1.

### 1.      Schaedel's Expert Affidavit Is Governed by Fed. R. Civ. P. 26(a)(2)

Disclosure of experts is governed by Fed. R. Civ. P. 26(a)(2).  See Chevron Corp. v. Shefftz, 754 F. Supp. 2d 254, 263 (D. Mass. 2010); Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., 301 F.R.D. 31, 35 (S.D.N.Y.).  Pursuant to Fed. R. Civ. P. 26(a)(2), parties are required to disclose to the opposing party the identity of any expert witness that may be used to present evidence.  See Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 59-60 (1st Cir. 2001). Courts may preclude a party who fails to satisfy the disclosure requirements of Rule 26(a) from "us[ing] as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Id. (alternations in original) (citation omitted).

Accordingly, Hill's reliance upon Fed. R. Civ. P. 26(a)(1) in seeking to strike Schaedel's expert affidavit is misplaced.  See Chevron Corp., 754 F. Supp. 2d at 263; In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. 498, 505 (D.N.J. 2005).  Experts do not "fall within the category of persons covered by the initial disclosure rule" set out in Fed. R. Civ. P. 26(a)(1).  In re Mercedes-Benz Anti-Trust Litig., 225 F.R.D. at 505.

### 2.      4 MRV's Disclosure of Schaedel's Affidavit Did Not Violate 4 MVR's Duty to Disclose Timely

4 MVR's disclosure of Schaedel did not violate 4 MVR's duty to timely disclose under the Rules.  In terms of timeliness, Rule 26(a)(2) requires that expert testimony must be disclosed "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  In the absence of a court order, expert testimony must be disclosed "at least 90 days before the date set for trial or for the case to be ready for trial."  Id.  The Court has not yet set an expert disclosure deadline.

D. 250 at 5; D. 265 at 7.   Indeed, in its most recent scheduling order, the Court provided that if no summary judgment motions were filed by the summary judgment motion filing deadline, the hearing for summary judgment motions would be converted into an initial pretrial conference at which expert discovery deadlines and a trial date would be set.   D. 195; D. 196.   In the absence of a court imposed deadline, pursuant to the instruction of Fed. R. Civ. P. 26(a)(2), 4 MVR was obligated to disclose Schaedel 90 days before the trial date.

### 3.      Exclusion of Schaedel's Affidavit Is Not Warranted under Fed. R. Civ. P. 37(c)

Even if there was any delay in disclosing Schaedel, the sanction that Hill seeks is not warranted.   Pursuant to Fed. R. Civ. P. 37(c)(1), "a party who 'without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed.'"   Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (alteration in original) (citing Fed. R. Civ. P. 37(c)(1)).   Here, to the extent that there was any delay in disclosing Schaedel's affidavit, the delay was justified based on the circumstances presented here.   Fact discovery closed on September 24, 2015, less than two months before 4 MVR filed Schaedel's affidavit on November 19, 2015. Compare D. 195 with D. 244.   On September 15, 2015, just before the close of fact discovery, Hill's Rule 30(b)(6) deposition was taken.   D. 257 ¶ 3.   4 MVR represents that the deposition transcripts were not served on 4 MVR until after October 21, 2015.   D. 265 at 4.   Given that particular timeline of events, it cannot be said that Schaedel's affidavit – which could not have been completed before the close of fact discovery since it draws upon facts collected in discovery including facts from Hill's deposition – was disclosed with unjustifiable delay.

In addition, exclusion of Schaedel's affidavit is not warranted because any delay here was harmless.   Both Rule 26(a) and Rule 37(c)(1) "seek to prevent the unfair tactical advantage that

can be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to 'depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery.'" Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004). Thus, "[i]n determining whether plaintiff's submission of [an expert] report was harmless, the Court must balance 'a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.'" Bay State Sav. Bank v. Baystate Fin. Servs., LLC, No. 03-cv-40273-FDS, 2007 WL 6064455, at *7 (D. Mass. Mar. 23, 2007) (citation omitted).

Considering the history of this litigation and the substantial opportunity Hill had to prepare expert evidence of his own regarding Hill Construction's financial health, there is no indication of unfair tactical advantage. First, Hill does not and cannot claim any surprise regarding the subject matter of Schaedel's affidavit. In his affidavit, Schaedel focuses upon the issue of Hill Construction's insolvency and Hill Construction's working capital prior to, during and after Contract execution. D. 256. These questions of Hill Construction's insolvency and working capital are central to this litigation. Moreover, Hill was aware of the importance of this topic given the discovery taken on this subject. See, e.g., D. 266-1 at 32; Hill's RA, Tab 6, Leinbach Dep. at 162:12-165:24, Sep. 21, 2015; Hill's RA, Tab 3, Hill Dep. at 100:12-104:13, Sept. 15, 2015.

For all of these reasons, the Court will not strike Schaedel's affidavit from the record on timeliness grounds.

**4.      Hill is Not Otherwise Entitled to Have Schaedel's Affidavit Struck**

Finally, Hill argues that Schaedel's affidavit should be stricken because (1) it is not based upon personal knowledge; (2) it does not identify the documents upon which Schaedel bases his

opinions; and (3) it fails to comply with the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). D. 250 at 5-7. Each of these arguments is unpersuasive. First, Schaedel's argument regarding Schaedel's lack of personal knowledge is without merit because Schaedel's affidavit is an expert submission, D. 250 at 6; D. 265 at 4, and "[t]o the extent an affiant is a qualified expert, her testimony need not be based on personal knowledge." Fraser & Wise, P.C. v. Primarily Primates, Inc., 966 F. Supp. 63, 69 (D. Mass. 1996) (citation omitted). Given that Hill concedes that Schaedel's "affidavit is properly characterized as an expert affidavit purportedly offering an expert opinion as to Hill Construction's solvency," D. 250 at 6, Schaedel's failure to rely upon personal knowledge is not a basis for striking the affidavit.

Second, in the affidavit, Schaedel does identify the documents – such as Hill Construction's QuickBooks accounting records, Hill Construction's corporate tax returns and Hill Construction's loan documents with Nantucket Bank – he relied upon in reaching each particular conclusion. See, e.g., D. 256 ¶¶ 12, 15, 17-18, 24-25, 31-34, 37-39. Schaedel also describes his relevant qualifications and experiences, including his twenty years of accounting experience. Id. ¶¶ 1-8. Accordingly, Schaedel's affidavit is not devoid of an adequate basis. See, e.g., Chao v. Moore, No. 99-cv-1283-AW, 2001 WL 743204, at *2 (D. Md. June 15, 2001) (declining to strike the expert affidavit where the expert sufficiently cited the facts upon which her opinion was based); M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 166 (4th Cir. 1992) (concluding that expert affidavit that identified the facts upon which the expert's opinion was based should be considered on a motion for summary judgment).

Third, Schaedel's affidavit will not be stricken for failure to comply with Fed. R. Civ. P. 26(a)(2)(B) because Fed. R. Civ. P. 26(a)(2)(B), applying to expert reports, is inapplicable to Schaedel's affidavit. See Fraser & Wise, P.C. v. Primarily Primates, Inc., 966 F. Supp. 63, 68 n.2

(D. Mass. 1996) (concluding that Fed. R. Civ. P. 26(a)(2)(B) was not a basis to strike where the expert affidavit did "not purport to be the report of an expert disclosed in accordance with Rule 26(a)(2)(B)").

**5.      4 MVR's Motion to Strike Schaedel's Second Affidavit Is Denied for the Same Reasons**

On February 2, 2016, 4 MVR filed a second affidavit from Schaedel.  D. 298.  Hill moves to strike Schaedel's second affidavit.  D. 303. In essence, Hill raises the same challenge he raises against Schaedel's original affidavit.  Accordingly, for the same reasons Hill's motion to strike Schaedel's original affidavit failed, this motion fails as well.

**C.      4 MVR's Motion to Strike the Affidavit of William J. Lovett Is Denied**

4 MVR moves to strike Attorney William J. Lovett's ("Lovett") affidavit submitted in support of Hill's motion for summary judgment.  D. 288.  4 MVR argues that Lovett's affidavit should be stricken because (1) it was filed two days after the court imposed deadline for summary judgment motions; and (2) it violated Local Rule 7.1(b)(1) because it was filed separately from Hill's motion for summary judgment without leave of court.  Id. at 1-2.  Although Hill did not to seek leave of court before filing an affidavit separate from the related motion for summary judgment due by an established deadline, 4 MVR does not argue that it has suffered any prejudice as a result of the two day delay or Hill's failure to seek leave of court before filing Lovett's affidavit.  As such, and for the sake of a thorough record, the Court denies the motion to strike Lovett's affidavit.  See, e.g., Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC, No. 09-cv-11873-LTS, 2014 WL 1278012, at *16 (D. Mass. Mar. 26, 2014); BASF Corp. v. Sublime Restorations, Inc., 880 F. Supp. 2d 205, 211 (D. Mass. 2012).

### D.      Hill's Motion to Strike Certain Paragraphs in Burn's Affidavit Is Denied

Hill moves to strike certain paragraphs in Burn's affidavit, D. 255, in support of 4 MVR's motion for summary judgment.  D. 259.  Hill contends that paragraphs 12, 14, 16, 18, 22, 24-26, 29, 32-37, 40, 42, 44-45 and 48-75 should be stricken.  D. 260 at 13.  Hill charges that these paragraphs contain inadmissible hearsay, are not based upon personal knowledge, conflict with Burn's sworn deposition testimony and interrogatory answers and contain legal conclusions.  Id. at 3-14.  With the exception of paragraph 40, the Court denies Hill's motion to strike as moot because the Court does not rely upon the challenged portions of Burn's affidavit in resolving the motions for summary judgment.

As to paragraph 40, the Court denies Hill's motion to strike because, contrary to Hill's characterization, D. 260 at 8, paragraph 40 is not a legal conclusion or unsupported allegation.  In paragraph 40, Burns asserts that "[i]f Hill had not falsely represented that he had secured adequate financing to undertake the Project on behalf of the Contractor, then I, on behalf of the Owner, was prepared to agree to Woodmeister's terms on the previously disputed contract issues and hire Woodmeister to construct the Project at the outset."  D. 255 ¶ 40.  Burns was a manager of 4 MVR and it is undisputed that he was directly involved in the negotiation and execution of the Contract.  D. 239 ¶¶ 61, 81-82, 94-96, 110, 133; D. 283 ¶¶ 61, 81-82, 94-96, 110.  Thus, he had personal knowledge of the contract negotiations and authority within 4 MVR sufficient to be directly engaged with the decision regarding whether to hire Woodmeister over Hill Construction.  See, e.g., Ruggiero v. Am. United Life Ins. Co., 137 F. Supp. 3d 104, 107 n.1 (D. Mass. 2015) (concluding that an affiant had sufficient personal knowledge to support his testimony where he served as vice president of a specific division involved in the dispute).  Accordingly, paragraph 40 is not stricken, but the motion to strike, D. 259, is otherwise denied as moot.

17

**E.     4 MVR's Motion to Strike Certain Paragraphs in Hill's Affidavit Is Denied**

4 MVR moves to strike certain portions of Hill's affidavit, D. 280, filed in support of Hill's cross motion for summary judgment.  D. 295.  Specifically, 4 MVR asserts that paragraph 15 conflicts with prior sworn testimony provided by Hill; paragraphs 15, 20, 39, 56, 57 and 59 contain and rely upon inadmissible hearsay; paragraphs 2-3, 5-8, 11-14, 16-17, 19-20, 25-29, 31, 34, 37, 39-52, 54-55, 61-64, 67-73 are conclusory and lacking in any support; paragraphs 66, 73, 75-77 are impermissible conclusions of law; and paragraphs 58-60 are inadmissible settlement communications.  D. 295 at 1.  The Court denies 4 MVR's motion to strike as moot because the Court does not rely upon the challenged portions of Hill's affidavit in resolving the motions for summary judgment.

**VI.   Motions for Summary Judgment on 4 MVR's Misrepresentation Claims**

4 MVR moves for summary judgment on three intentional misrepresentation claims:  (1) Hill's representation that Hill Construction secured financing sufficient to undertake the Project; (2) Hill's representation that Hill Construction was solvent; and (3) certain representations Hill made on Pay Applications.  D. 232 at 1-2.  Hill moves for summary judgment on the same claims.  D. 276.  To establish a claim for intentional misrepresentation, a plaintiff must show that the defendant:   (1) made a false representation of material fact; (2) knew at the time the misrepresentation was made that the representation was false; (3) intended to induce the plaintiff to take a particular action; and (4) the plaintiff reasonably relied upon the defendant's representation as true to the plaintiff's detriment.  See Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (citation omitted); Barden v. Harpercollins Publishers, Inc., 863 F. Supp. 41, 43 (D. Mass. 1994) (citation omitted).  Statements that were "known to be untrue when made or made with reckless indifference to their truth" may give rise to a misrepresentation claim.  Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 66 (D. Mass. 2004).  Such statements include

18

"actual, direct false statements as well as half-truths and the knowing concealment of facts."  Id.

(citation omitted).

A.      **Hill Is Entitled to Summary Judgment on 4 MVR's Claim that Hill Allegedly Misrepresented that Hill Construction Secured Financing and Funding**

1.      **The Alleged Misrepresentations and the Integration Clause**

4 MVR contends that Hill fraudulently induced it to enter into the Contract by

misrepresenting that Hill Construction secured financing and funding sufficient to undertake the

Project in accordance with the Contract.  D. 253 at 4-9.  4 MVR asserts that Hill, after having been

informed that Hill Construction's access to financing and funding was material to 4 MVR's

decision to award Hill Construction the Project, represented to 4 MVR directly in writing and

orally that Hill had obtained the funding and financing necessary for Hill Construction to undertake

the Project.  D. 253 at 4-5.  4 MVR points to emails Hill sent on February 8 and 9, 2010 as

containing Hill's statement(s) that Hill Construction had acquired financing.  In a February 8

email, Hill wrote to Burns:

> I had just finalized arrangements to reorganize a partnership the [sic] I've been involved in
> and had the financing to do this, Nantucket Bank was not my last option to pursue and I
> felt that more than one million was needed and I was working on the contractual mechanics
> of how much I needed and when; I was beyond if I could do it.  I thought that in the proposal
> it said if offered we would have 10 days to come to an agreement.  Of course, I would not
> reorganize my partnership without having the job in the first place since it involves some
> holdings I have overseas. I needed to know that the contract would be a design for success
> and I was close to being able to guarantee that.

D. 292-1; 4 MVR's RA, Tab 24, Ex. 71, HILL 015738, Aug. 28, 2015; Hill's RA, Tab 30, Ex. 71,

HILL-015738, Aug. 28, 2015.  In another February 8 email, in response to an email in which Burns

asked if Hill Construction might be willing to reengage negotiations, Hill wrote to Burns:

> I certainly would.  I am of the beleif [sic] that you need the chance to see by doing that if
> everything can be made good on and that it is in your best interesest [sic] to move on.
> Understand that other types of funding for your job was tricky while I needed to observe
> the requirement to maintain confidentiality in dealing with your business.  I assumed that
> banking did that, but that did not work.  I then assumed that it would be ok to persue [sic]

this partnership that I have because it is an existing business that I am invested in and would be similar to a mortgage on a house that I owned half of.  I will take a step back but am at your service if you want to begin to negotiate again.

4 MVR's RA, Tab 26, Ex. 178, HILL 016271, Sept. 15, 2015; Hill's RA, Tab 32, Ex. 178, HILL 016271, Sept. 15, 2015.  In a February 9 email to Heidi Leinbach, Hill asked Leinbach to send along a letter to Hugh Jacobsen, another member of 4 MVR's architecture team, that read:

> Thank you for taking our proposal and trying to again get us this job.  I am glad we gave you something to work with.  I apologize that I could not immediately sign this contract.  I thought there were issues that needed to be negotiated and discussed so that I could promise that we had a program of success and not a design for failure.  I was pleased with your progress on preliminary negotiations on topics such as retainage and penalty clauses.  It was difficult to quickly resolve the issue of payments on deposits.  I hope that it is absolutely clear that I have resolved this issue on my side and have obtained the necessary funding as a company to pay deposits on subcontracts in full agreement with the proposed contract.

D. 292-2 at 3; 4 MVR's RA, Tab 27, Ex. 179, HILL 017128, Sept. 15, 2015.  4 MVR contends that these statements amount to "unequivocal" representations that Hill had secured funding and that the statements were false because Hill had not secured funding. D. 253 at 4.  4 MVR contends that it informed Hill that Hill Construction's acquisition of financing was material to 4 MVR's decision to abandon negotiations with Woodmeister and recommence negotiations with Hill.  D. 253 at 5; D. 253 at 4.

Massachusetts courts have rejected the notion that "a contract must be held sacred regardless of the fraud of one of the parties in procuring it."  Bates v. Southgate, 308 Mass. 170, 182 (1941).  Accordingly, in determining whether to take the exceptional action of disregarding the terms of the contract, "it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud."  Id.  In weighing these considerations, courts look "at the length of negotiations; whether the plaintiffs were represented by counsel; who proposed changes that became part of the final agreement; and whether the subject

of the purported misrepresentation was specifically addressed in the contract." Cone v. Ellis, 59 Mass. App. Ct. 748, 751-52 (2003) (citation omitted). "[P]rovisions . . . [that are] not 'boilerplate' but . . . [are] negotiated and agreed to . . . are to be respected and enforced according to their terms." Id. at 751 (citing Greenery Rehab. Grp., Inc. v. Antaramian, 36 Mass. App. Ct. 73, 75 (1994)). Disregarding an unambiguous contractual provision where there is not particular cause to do so would render contracts "no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements." Turner v. Johnson & Johnson, 809 F.2d 90, 96 (1st Cir. 1986).

The Contract between 4 MVR and Hill Construction contains an unambiguous integration clause that reads:  "The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements either written or oral." Hill's  RA, Tab 12, Ex. 9, AIA Document A101-2007 at Article 1, HILL 000003;  4 MVR's RA, Tab 8, Ex. 9, AIA Document A101-2007 at Article 1, HILL 000003.  By its plain language, the integration clause expressly and unambiguously disallows the parties from relying upon statements and representations, either oral or written, that were made prior to the Contract and that are not reflected in the Contract.  See, e.g., Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 155 (1993) (concluding that a contract clause that provided "[t]his lease merges and supersedes all prior negotiations, representations and agreements, and constitutes the entire agreement between lessor and [t]enant" was "unambigious").  Whether this clause must be enforced and bars reliance upon statements that were made prior to the Contract turns upon the nature of the contract negotiations between 4 MVR and Hill Construction.  See Cone, 59 Mass. App. Ct. at 751-52.

      **2.**      **The Negotiations between 4 MVR and Hill Construction Support Enforcement of the Integration Clause**

First, 4 MVR and Hill Construction are business entities led by persons experienced in the construction industry.  Burns considers himself to be a relatively sophisticated businessman.  D. 239 ¶ 5; D. 283 ¶ 5.  Burns agreed to the integration clause language on behalf of 4 MVR.  D. 239 ¶ 81; D. 283 ¶ 81.  Hill is similarly experienced:  Hill had begun building houses on Nantucket in 1976.  D. 239 ¶¶ 19, 21, 23; D. 283 ¶¶ 19, 21-23.  Hill Construction employed approximately six employees in 2009, including a licensed supervisor with fifty years of construction experience.  D. 239 ¶¶ 25-26; 283 ¶¶ 25-26.  In these ways, the parties were sophisticated, repeat players.  See, e.g., Adar Investments, LLC v. Bayview Loan Servicing, LLC, 87 Mass. App. Ct. 1132 (2015) (granting summary judgment on misrepresentation claim where the agreement contained a clause waiving reliance upon any of the defendant's prior statements and the parties were "sophisticated business entities") (citation omitted); Belmont L.V. Land Ltd. P'ship v. Lake Vista Villa Ltd. P'ship, No. 98-cv-5119-AVG, 2001 WL 1763950, at *4 (Mass. Super. Nov. 26, 2001) (allowing summary judgment on fraud claim where the contract between the "sophisticated parties" contained a clause reciting that neither party relied upon prior statements in entering into the contract).

Second, 4 MVR and Hill Construction engaged in extended and deliberate negotiations during which they were represented by counsel.  When 4 MVR opened the bidding process, it made available to the bidders a draft of the Contract that 4 MVR had modified to fit the particular demands of this Project.  D. 239 ¶ 77, 79; D. 254 ¶¶ 7, 8, 10; D. 283 ¶ 79.  That initial draft of the Contract was the American Institute of Architect's ("AIA") Document A101-2007 and Document A201-2007 with modifications made by 4 MVR's counsel.  D. 239 ¶ 105; D. 283 ¶ 105.  Once Hill Construction had been awarded the Project, 4 MVR and Hill Construction engaged in two separate rounds of negotiations – which were separated by a brief period during which 4 MVR

unsuccessfully attempted negotiations with Woodmeister, the second lowest bidder.  D. 239 ¶¶ 133, 139, 157, 162; D. 254 ¶ 48, 72, 79, 82; D. 279 ¶ 22.

During the negotiations, both 4 MVR and Hill Construction were represented by counsel. D. 239 ¶¶ 79, 101, 103, 162; D. 254 ¶ 22; D. 283 ¶¶ 101, 105.  The parties negotiated, *inter alia*, funding and financing available to Hill Construction and billing methods.  D. 239 ¶¶ 124-132, 140-143; D. 254 ¶¶ 16, 31-33, 35-41; D. 279 ¶¶ 17-19; D. 255 ¶¶ 12, 15.  The parties exchanged drafts of the Contract and both parties proposed changes.  See, e.g., D. 239 ¶ 178; D. 254 ¶¶ 173-74; D. 283 ¶ 178; 4 MVR's RA, Tab 45, HILL 044992, Sam Hill's Feb. 2, 2010 email; Hill's RA, Tab 42, 4 MVR 0067971, Burn's Feb. 16, 2010 email; Hill's RA, Tab 43, 4 MVR 0068865, Richard Zelinka's Feb. 17, 2010 email.  Specifically, counsel for 4 MVR and Hill Construction exchanged extensive revisions to the draft contract on February 15 and February 17, 2010.  D. 239 ¶¶ 178-80; D. 283 ¶¶ 178-80.  In addition, Hill Construction and 4 MVR's representatives, including Burns and Hill, met in person to discuss the Contract.  D. 239 ¶ 165; Hill's RA, Tab 41, Ex. 198, HILL 019235, Jacobsen Architecture's Meeting Notes dated Feb. 17, 2010.  As a result of the negotiations, the Contract was not boilerplate and instead represented trade-offs between the two parties.  See, e.g., Greenery Rehab. Grp., Inc. v. Antaramian, 36 Mass. App. Ct. 73, 76 (1994) (concluding on summary judgment that integration clause was entitled to enforcement where the contract was "negotiated and agreed to" rather than "boilerplate").

Taking all of the factors together, the robust nature of negotiations between 4 MVR and Hill – two represented and experienced parties – compels the conclusion that the integration clause must be enforced and prior statements are not actionable.  See McCartin v. Westlake, 36 Mass. App. Ct. 221, 231 (1994) (concluding that the misrepresentations were not actionable and granting the defendants' motion for directed verdict, the court explained that "[t]he deliberate, uncoerced,

and businesslike process by which the parties reached final, written agreements cannot be undone merely on the claim, later asserted, that the plaintiffs understood that the commitment and obligations of the parties were otherwise than as stated in the signed contract documents").

Finally, disregarding the integration clause is unwarranted because, despite the benefit of discovery, 4 MVR has not made a showing of any imbalanced dynamic present during contract negotiations, any element of coercion that was present during the negotiations or any post-negotiation deceitful action regarding the integration clause that Hill took that would warrant a disregard of the Contract's unambigious term. Cf. McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 708, 712-13 (1990) (concluding that misrepresentation was actionable despite integration clause in the contract where individual relied upon corporation's post-negotiation assurances that certain contractual provisions that the corporation unilaterally inserted in the contract would not be enforced).  To the contrary, it was 4 MVR that presented the initial draft of the Contract with the integration clause already contained therein.  D. 239 ¶¶ 188-191; D. 283 ¶¶ 188-191; Hill's  RA, Tab 12, Ex. 9, AIA Document A101-2007, HILL 000001;  4 MVR's RA, Tab 8, Ex. 9, AIA Document A101-2007, HILL 000001.  Even if 4 MVR had hoped to incorporate Hill's assurance regarding acquisition of financing into the Contract, that term was not included in the Contract despite the many rounds of edits and 4 MVR "cannot later raise the content of negotiations 'to contradict what is finally and unequivocally agreed upon in the final version of the contract,' without creating the (legally unacceptable) result that 'the language of the contract simply would not matter any more." Masingill v. EMC Corp., 449 Mass. 532, 542 (2007) (internal citation omitted).

Accordingly, 4 MVR's misrepresentation claim fails because the Contract's integration clause barred 4 MVR from reasonably relying upon Hill's alleged misrepresentations regarding

Hill Construction's acquisition of financing.[6]  Hill's motion for summary judgment on this claim is allowed.

      **B.**    **4 MVR Is Entitled to Summary Judgment on Hill's Misrepresentation Regarding Hill Construction's Solvency**

4 MVR contends that Hill fraudulently represented that Hill Construction was solvent and 4 MVR reasonably relied upon that assertion in deciding to enter into the Contract.  D. 253 at 9-10.  Both parties move for summary judgment on this claim.  D. 232; D. 276.

      **1.**    **Hill's Representation regarding Hill Construction's Finances**

Hill's representation that Hill Construction was solvent is contained in the Contract.  4 MVR's RA, Tab 8, Ex. 9, AIA Document A101-2007 § 8.6.3, HILL 000011, Feb. 20, 2010; Hill's RA, Tab 12, Ex. 9, AIA Document A101-2007 § 8.6.3, HILL 000011, Feb. 20, 2010.  Section § 8.6.3 provides:  "[Hill Construction] is financially solvent, able to pay all its debts as they mature and possessed of sufficient working capital to complete the Work and perform all obligations hereunder."  Id.  By the express language of that provision, and by executing the Contract, Hill represented that Hill Construction was financially solvent.  The Contract further provides that the assurance regarding solvency "shall survive the execution and delivery of [the] Agreement, any termination of [the] Contract and the final completion of the Work."  Id.  In February 2010, when

---

[6]   Hill and Hill Construction previously moved for dismissal of 4 MVR's claim that Hill misrepresented Hill Construction's acquisition of financing and funding.  The Court granted dismissal, explaining that "even if 4 MVR was not foreclosed from raising as fraudulent Hill's representation due to the integration clause in the Contract, for the reasons stated above, 4 MVR has failed to plead the factual basis for the falsity of Hill's representation."  D. 50 at 11.  Thus, the integration clause was one of the two grounds upon which 4 MVR's misrepresentation claim was dismissed.  Id.  Now, based upon a fully developed record that demonstrates that the Contract was the result of deliberate and uncoerced negotiations during which both parties were represented, the Court determines as a matter of law that the integration clause barred 4 MVR from reasonably relying upon any prior statement Hill made regarding financing.

Hill executed the Contract, this representation became binding.  D. 239 ¶¶ 78, 105, 185; D. 254 ¶¶ 21, 23-24.

Throughout this action, 4 MVR has repeatedly alleged and asserted that it relied upon the representation that Hill Construction was solvent.  D. 81 ¶¶ 27, 88; D. 255 ¶¶ 35-40.  Because the representation regarding Hill Construction's solvency is contained in the Contract, 4 MVR's reliance upon the representation was reasonable as a matter of law.  See, e.g., Roadmaster Indus., Inc. v. Columbia Mfg. Co., 893 F. Supp. 1162, 1179 (D. Mass. 1995) (concluding that reliance upon misrepresentations was reasonable where the representations were expressly incorporated into the agreement).

### 2.    Hill's Representation that Hill Construction Was Solvent Was False

#### a.    Schaedel's Affidavit Proves Hill Construction's Insolvency

Having resolved that Hill made a representation regarding Hill Construction's financial health upon which 4 MVR reasonably relied, the Court's decision turns upon whether there exists a genuine issue of material fact as to Hill Construction's insolvency.  On this point, 4 MVR submits an affidavit from Larry Schaedel, a certified public accountant with thirty years of accounting experience.  D. 256 ¶¶ 1-2, 8.  Based upon a review of Hill Construction's corporate tax returns, accounting records stored on QuickBooks software, loan documents with Nantucket Bank and the Contract, D. 256 ¶ 12, 24-25, 31-45, Schaedel concludes that Hill Construction was insolvent during the negotiations of the Contract, at the time of execution and during the performance of the Contract.  Id. ¶ 36.

On or about April 13, 2004, Hill signed a promissory note both in his individual capacity and as president of Hill Construction, promising to pay the Nantucket Bank $400,000 (the "Bank Loan").  Id. ¶ 15; 4 MVR's RA, Tab 84, Loan No. 32000005334 Document dated Oct. 22, 2015, NANTUCKETBANK 0007086.  In conjunction with the promissory note, Hill signed a business

credit agreement, the terms of which provided, *inter alia*, that the "line was to be cleared for a zero balance for 30 consecutive days per calendar year." Id. ¶ 17. Also in conjunction with the promissory note, Hill Construction and Hill signed a security agreement granting Nantucket Bank an unlimited security interest in all of Hill Construction's assets. Id. ¶ 18. Hill does not dispute that he entered into this agreement with Nantucket Bank. D. 277 at 15-16. The Bank Loan was renewed or extended approximately annually and remained in place through at least February 22, 2010. 4 MVR's RA, Tab 85, Loan No. 32000005334 Document dated Aug. 21, 2014, NANTUCKETBANK 000707.

Schaedel explains that Hill Construction was in default of the terms of the Bank Loan beginning on at least December 3, 2009 because it failed to reduce the balance of the Bank Loan to a zero balance for thirty consecutive days during calendar year 2009, as was required by the terms of the Bank Loan. D. 256 ¶¶ 27, 40. Schaedel points to Hill Construction's QuickBook accounting records which demonstrate that at no point from January 1, 2009 through February 22, 2010 was the balance of the Bank Loan reduced to a zero balance for thirty consecutive days. 4 MVR's RA, Tab 86, Christine Genaitis' Letter dated Nov. 7, 2014. When Hill Construction failed to satisfy the requirement to zero out the balance of the Bank Loan, pursuant to the terms of the Bank Loan the full outstanding balance of the Loan became due and became a current liability for Hill Construction. Id. ¶ 20; 4 MVR's RA, Tab 84, Loan No. 32000005334 Document dated Oct. 22, 2015.

Schaedel opines that Nantucket Bank's records reveal that Hill Construction had negative working capital. On November 13, 2009, a Nantucket Bank Commercial Lending Screen Print reflected that Hill Construction was past due on payment, that the loan had matured and that the principal balance along with additional interest in the amount of $401, 730. 19 was due. 4 MVR's

RA, Tab 84, Loan No. 32000005334 Document dated Oct. 22, 2015, NANTUCKETBANK 0007177.  Based upon these documents, Schaedel concludes that from February 1, 2010 to February 22, 2010 – the period during which the Contract was executed – Hill Construction had significant "negative working capital," i.e., Hill Construction's current liabilities exceeded its current assets.  D. 256 ¶¶ 29-31.  Schaedel explains that "[n]egative [w]orking [c]apital is a primary indication that a debtor cannot pay its obligations as they become due."  Id.  Moreover, according to Schaedel, the fact that Hill Construction's current liabilities exceeded its current assets means that Hill Construction satisfied the definition of insolvency, as it is defined by both the Uniform Voidable Transactions Act and the United States Bankruptcy Code section 101(32)(A).[7]  Id. ¶¶ 35, 38, 43, 45.

Schaedel also attests that Hill Construction's 2009 federal corporate tax returns confirm that Hill Construction was insolvent at the time Hill Construction agreed to the Contract.  D. 256 ¶¶ 31-32, 39, 44.  Hill Construction's 2009 federal corporate tax returns reveal that on November 1, 2009 Hill Construction had current liabilities in the amount of $ 625,091 with current assets in the amount of $ 26,986.  4 MVR's RA, Tab 87, U.S. Corporation Income Tax Return Form 1120, HILL 054845-054873.  Thus, Hill Construction's liabilities exceeded its assets and Hill Construction had negative working capital.  D. 256 ¶¶ 30-32.  Similarly, according to Hill Construction's 2009 federal corporate tax returns, on December 31, 2010, Hill Construction had current assets in the amount of $ 166,941 while Hill Construction's current liabilities totaled $ 392,178.  4 MVR's RA, Tab 87, U.S. Corporation Income Tax Return Form 1120, HILL 054845-

[7] Hill Construction's QuickBook records demonstrate that Hill Construction had current liabilities in excess of current assets, and therefore negative working capital, at least on February 1, 2010 and continuing through February 22, 2010 even if the Bank Loan is treated as a current asset.  D. 256 ¶ 34.

054873.  In December 2010, therefore, before contract negotiations with 4 MVR had begun, Hill

Construction's liabilities exceeded its assets and Hill Construction had negative working capital.

D. 256 ¶¶ 30-32.

In the end, Schaedel concludes – based upon Hill Construction's tax returns for 2009, Hill

Construction's QuickBooks accounting records and Hill Construction's banking records and loan

documents with Nantucket Bank – that before and at the time the Contract was executed Hill

Construction was insolvent.  D. 256 ¶ 44.  In addition to qualifying as insolvent, Hill Construction

was unable to pay its debts as they matured and had negative working capital.  Id. ¶¶ 44-46.  As

Hill and Hill Construction had access to these documents that clearly demonstrate Hill

Construction's insolvency, Hill and Hill Construction were aware of Hill Construction's

insolvency.

### b.  Hill Has Failed to Rebut 4 MVR's Showing

To rebut 4 MVR's showing as to Hill Construction's insolvency, Hill must produce

evidence that is "significant[ly] probative."  Borges, 605 F.3d at 5 (citation omitted).  Hill's

assertions are not significantly probative because (1) they are conclusory and wholly unsupported;

and (2) they are contradicted by the substantial evidence in the record demonstrating Hill

Construction's insolvency.  First, in Hill's opposition to 4 MVR's motion for summary judgment,

Hill contends that "[t]here [i]s [n]o [e]vidence [t]hat Hill Construction [w]as [e]quitably

[i]nsolvent [w]hen [t]he [a]lleged [m]isrepresentation [w]as [m]ade."  D. 277 at 15.  For all of the

reasons discussed in the previous section, 4 MVR has produced uncontroverted evidence,

including Hill Construction's own accounting and banking records, demonstrating that Hill

Construction was insolvent, including equitably, at the Contract execution.  Hill's conclusory

denial of 4 MVR's evidentiary showing is insufficient to defeat 4 MVR's motion for summary judgment.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 849 (1st Cir. 1993).

Second, Hill asserts that Hill Construction was equitably solvent because it paid all of its debts during the twenty-two months on the Project, the subcontractors received payment for work completed that 4 MVR paid and the Bank Loan was not in default.  D. 277 at 15.  To support these assertions, Hill points to his statement of facts, D. 254, his supplementary statement of facts, D. 279 and his affidavit.  D. 280.  None of these filings, however, provide evidentiary support for Hill's arguments.  These filings do not point to Hill Construction's accounting records, any billing records, the documents of the Bank Loan or any other relevant financial documents to support Hill's assertions.[8]   Hill cannot rebut 4 MVR's substantial showing of Hill Construction's insolvency with unsupported assertions.  See e.g., Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 6 (1st Cir. 1994).  Hill's "mere allegations" and "denials of the . . . pleading[s]" are insufficient to create a triable issue of material fact.  Id.

Moreover, even if Hill's allegations were true, he has failed to present any evidence, expert testimony or otherwise, demonstrating that those factual allegations necessarily mean that Hill Construction was solvent.  For example, Hill asserts that 4 MVR's motion for summary judgment on the solvency representation should be denied because Hill Construction paid the subcontractors the amounts due as 4 MVR paid Hill Construction those amounts.   D. 277 at 15.  Hill has not, however, provided any expert statement or other evidence that establishes that Hill Construction paying the subcontractors the amounts due precludes the possibility that Hill Construction was insolvent.  In this way as well, Hill's unsupported contentions do not create a genuine issue of

---

[8]  Moreover, Hill's assertion that the Bank Loan was not in default is directly contradicted by the loan documents that are in the record.  As discussed above, Hill Construction's loan documents demonstrate that the Bank Loan was in default pursuant to its own terms.

material fact.  See, e.g., Borges, 605 F.3d at 8 (concluding that unsupported opinion was insufficient to create a triable issue as to any material fact and granting summary judgment); In re Duplication Mgmt., Inc., 501 B.R. 462, 486 (Bankr. D. Mass. 2013) (granting summary judgment on claim regarding solvency where "the [d]efendants failed to produce any evidence, expert or otherwise").

Finally, Hill's substantive challenges to Schaedel's affidavit are unsubstantiated and meritless.  Hill raises four challenges:  (1) Schaedel invokes definitions of solvency that are not in the Contract; (2) Schaedel does not identify how much working capital was needed to perform under the Contract or any evidence that Hill Construction's bills were not paid; (3) Schaedel wrongly assumes that the Bank Loan was in default; and (4) Schaedel improperly classifies amounts loaned to Hill Construction as a current liability.  D. 277 at 16.  Hill objects to Schaedel's application of the "accounting insolvency" standard defined by the Uniform Voidable Transfer Act, the Bankruptcy Code and the "Generally Accepted Accounting Principles" because those standards are not invoked in the Contract.  Id.  That argument is unavailing because Hill provides no support for its assertion that only those bankruptcy definitions that are invoked in the Contract can be relevant to an expert assessment of Hill Construction's solvency based upon industry standards.  Id.  Hill's contention that Schaedel's affidavit is flawed because Schaedel does not identify how much working capital was needed to perform under the Contact and because Schaedel does not identify evidence showing that Hill Construction's bills were paid is similarly unconvincing.  Hill has not established that either of those points are essential to determining Hill Construction's financial status.

To the contrary, Schaedel's affidavit makes clear both the definition of solvency – an excess of assets over liabilities – and the basis upon which Schaedel reaches the conclusion that

31

Hill Construction is insolvent – a review of Hill Construction's accounting records, banking documents and federal tax returns that revealed that Hill Construction's current liabilities exceeded its current assets.  Finally, Schaedel's third and fourth challenges are contradicted by Schaedel's affidavit and the evidence upon which it relies:  Schaedel's assertion that the Bank Loan was in default is drawn directly from Hill Construction's banking documents, D. 256 ¶ 27, the authenticity of which Hill does not dispute.  In any event, the fact that Hill Construction's Bank Loan was in default is only one of the factors considered in Schaedel's affidavit.[9]  Because Hill Construction has failed to rebut 4 MVR's substantial showing that Hill Construction was insolvent at the time the Contract was executed, there exists no genuine issue of material fact as to Hill Construction's insolvency.

### 3.    Hill Construction's Misrepresentation Caused 4 MVR Injury

The record provides a sufficient basis for the Court to conclude that 4 MVR's reasonable reliance upon Hill's false statement caused 4 MVR injury.  In January 2012, Hill informed 4 MVR that Hill Construction needed a four-month extension on the Project and an additional $1.5 million to complete the Project.  D. 81 ¶ 70; D. 81-2; D. 81-3.  Hill also informed 4 MVR that Hill Construction did not have the financial resources to continue operating as a business if it had to perform under the terms of the Contract.  D. 81-2 at 1.  Hill stated that Hill Construction's "resources [would] be exhausted," Hill Construction [would] be unable to pay subcontractors and would have to walk away from [its] obligations, whether through bankruptcy or otherwise."  Id. Thereafter, 4 MVR terminated the Contract.  D. 239 ¶ 397; D. 254 ¶ 317; D. 283 ¶ 397.  4 MVR

---

[9]    For instance, Schaedel concludes that Hill Construction's QuickBook accounting records demonstrate that Hill Construction had current liabilities in excess of current assets and therefore a negative working capital.  D. 256 ¶ 34.  Schaedel expressly provides that this conclusion holds "true regardless of whether or not Loan Number 320005334 is considered a [c]urrent [a]sset."  Id.

then contracted with Woodmeister to complete the Project.  D. 239 ¶ 399; D. 254 ¶ 319; D. 283 ¶ 399.

4 MVR has consistently maintained that it entered into the Contract with Hill Construction based in part upon the assurance that Hill Construction was in an adequate financial position to carry out the Project in compliance with the Contract.  D. 81 ¶¶ 81-88.  In his affidavit, Burns states that if Hill had revealed the truth of Hill Construction's financial status, 4 MVR would have awarded the Project to Woodmeister from the outset and avoided the increased costs of terminating the Contract with Hill Construction and reengaging another contractor to complete the Project.  D. 255 ¶ 40.  Thus, 4 MVR has demonstrated that its reasonable reliance upon Hill's misrepresentation resulted in injury in the form of increased costs.

In sum, 4 MVR has marshalled evidence to support each element of this intentional misrepresentation claim and 4 MVR is entitled to summary judgment.  See, e.g., Massachusetts Mut. Life Ins. Co. v. Fraidowitz, 360 F. Supp. 2d 243, 247 (D. Mass. 2005), aff'd, 443 F.3d 128 (1st Cir. 2006) (granting motion for summary judgment where "no reasonable jury could possibly reach any other conclusion on this record but that [the defendant] was responsible for a misrepresentation on his application . . . and that this misrepresentation manifestly subjected [the plaintiff] to an increased risk").  Accordingly, 4 MVR's motion on this claim is allowed.

### C.    Hill's Alleged Misrepresentations on Pay Applications

4 MVR alleges that Hill made a series of misrepresentations on Pay Applications Hill Construction submitted during the Project, D. 253 at 13, and moves for summary judgment on these claims.  D. 232.  Hill also moves for summary judgment on these claims.  D. 276.  Pursuant to the Contract, Hill was permitted to submit Pay Applications twice per month for work performed and for materials that were delivered and suitably stored.  D. 239 ¶¶ 220-221; D. 283 ¶¶ 220- 221; Hill's RA, Tab 12, Ex. 9, AIA Document A101-2007 § 5.1, HILL 000007-000008; 4 MVR's RA,

Tab 8, AIA Document A101-2007 § 5.1, HILL 000007-000008.  Hill Construction submitted Pay

Applications to Jacobsen for certification.  D. 239 ¶¶ 324-326; D. 283 ¶¶ 324-326.  4 MVR issued

payment to Hill for only those Pay Applications that were certified by Jacobsen.  D. 239 ¶ 326; D.

283 ¶ 326.  In connection with each of the Pay Applications that were submitted to 4 MVR, Hill

certified on behalf of Hill Construction as follows:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents that all amounts have been paid by the Contractor for Work for which previous Certificates of Payment were issued and payments received from the owner.

D. 251 at 18-19; D. 255 ¶ 44; D. 253 at 13; D. 254 ¶ 188; 4 MVR's RA, Tab 46, AIA Doc. G702-

1992, HILL 008169, Pay Application dated Dec. 10, 2010; Hill's RA, Tab 51, Ex. 13, AIA Doc.

G702-1992, HILL 009738, Pay Application dated Dec. 26, 2010.  In connection with each of the

Pay Applications Hill Construction submitted, Jacobsen certified as follows:

> In accordance with Contract Documents, based on on-site observations and the data compromising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief, the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

D. 239 ¶ 288; Hill's RA, Tab 51, Ex. 13, AIA Doc. G702-1992, Pay Applications, HILL 009738;

Hill's RA, Tab 12, Ex. 9, HILL 000210, AIA Document A101-2007 § 9.4.2; 4 MVR's RA, Tab 8,

HILL 000210, AIA Document A101-2007 § 9.4.2.   During its time on the Project, Hill

Construction submitted 42 Pay Applications.  D. 239 ¶ 324; D. 283 ¶ 324; Hill's RA, Tab 51, Ex.

13, AIA Doc. G702-1992, Pay Applications, HILL 009738; 4 MVR's RA, Tab 46, AIA Doc.

G702-1992, Pay Applications, HILL 008169; 4 MVR's RA, Tab 51, Statement of Account(s).

Jacobsen certified Pay Applications 1 through 41.  D. 239 ¶ 325; D. 283 ¶ 325.  4 MVR paid Hill

Construction on the amounts certified by Jacobsen for Pay Applications 1 through 41.  D. 239 ¶

326; D. 283 ¶ 326.  While Pay Application 42 was submitted, 4 MVR did not release to Hill

Construction the amount claimed in Pay Application 42.  D. 239 ¶ 327; D. 283 ¶ 327.  Hill signed

each Pay Application on behalf of Hill Construction.  D. 254 ¶¶ 186-306.

The payment arrangement between 4 MVR and Hill involved two elements that are critical

to 4 MVR's claim:  change orders and retainage.  First, the Pay Applications incorporated change

orders.  The Contract defines a change order as "a written instrument prepared by [Jacobsen] and

signed by [4 MVR], [Hill Construction] and [Jacobsen] stating their agreement upon all of the

following:  (1) [t]he change in the Work; (2) [t]he amount of the adjustment, if any, in the Contract

Sum; and (3) [t]he extent of the adjustment, if any, in the Contract Time."  Hill's RA, Tab 12, Ex.

9, AIA Document A201-2007 § 7.2.1, HILL 000206; 4 MVR's RA, Tab 8, Ex. 9, AIA Document

A201-2007 § 7.2.1, HILL 000206.  Second, the Contract provided for a retainage – that is, a

percentage of the agreed upon contract price that 4 MVR held until certain benchmarks in the

progression of the Project were met.  D. 239 ¶ 327; D. 283 ¶ 327; Hill's RA, Tab 12, Ex. 9, HILL

000008, AIA Document A101-2007 § 5.1.8; 4 MVR's RA, Tab 8, HILL 000008, AIA Document

A101-2007 § 5.1.8.  4 MVR describes the retainage as "a protection for [4 MVR] in the event that

Work in place was defective or not performed in compliance with the Contract requirements."  D.

283 ¶ 327.

Drawing from these undisputed facts, 4 MVR alleges four misrepresentations relating to

Pay Applications:  (1) on Pay Applications 20 through 41, Hill misrepresented the percentage of

work completed on the Project by, *inter alia*, over-representing on change orders the percentage

of work completed; (2) on Pay Applications 41 and 42, Hill misrepresented the percentage of the

work completed and that the work had been completed in accordance with the Contract by

impermissibly billing for material and labor cost overruns; (3) on Pay Applications 39 through 41,

Hill misrepresented that Hill Construction had fulfilled its contractual obligation to pay retainage to subcontractors whenever 4 MVR paid retainage to Hill Construction; and (4) Hill's representation on each of the 42 Pay Applications submitted that the work covered by the Pay Application had been completed in accordance with the Contract was false because Hill had failed to comply with the Contract provision requiring Hill Construction to incorporate the terms of the Contract between 4 MVR and Hill Construction into Hill Construction's subcontracts.

### 1.  Hill Is Entitled to Summary Judgment on 4 MVR's Claims regarding Misrepresentations of Work Completed

The first two misrepresentations on Pay Applications that 4 MVR alleges amount to allegations that Hill misrepresented the percentage of work completed on the Project.[10]   D. 253 at 14, 16.  To the extent that 4 MVR's claims rest upon the contention that Hill misrepresented the percentage of work completed on Pay Applications, the claims fail for two reasons:  (1) Hill did not make a representation regarding the percentage of work completed; and (2) even if statements regarding the percentage of work completed could be ascribed to Hill, those statements were merely estimates and are therefore not actionable.

### a.  Hill Did Not State the Percentage of Work Completed

There is no basis for ascribing the statements on Pay Applications regarding percentages of work completed to Hill.  In relevant part, Hill's certifications on the Pay Applications provided

---

[10]  As to its claim regarding change order work, 4 MVR asserts that "[i]n or about August and early September 2011, Jacobsen realized that Hill on behalf of the Contractor had billed 100% for the change order Work even though the change order work was not 100% complete and in some instances had not been performed at all" and "the work under certain Change Orders that Hill had represented in Pay Applications 20 through 37 was complete either had not been performed at all or still had not been completed by September 7, 2010 to the level represented by Hill."  D. 253 at 14.  As to its claim regarding cost overruns 4 MVR asserts that "[b]y overbilling for Silverio Tile's labor cost overruns, Hill intentionally misrepresented the percentage of the Work completed and that the Work had been completed in accordance with the Contract documents."  Id. at 17.

that "the Work covered by this Application for Payment has been completed in accordance with the Contract Documents."[11] D. 82 ¶ 34; D. 251 at 18; D. 255 ¶ 44; D. 253 at 13. Thus, by signing and submitting the Pay Applications, Hill certified that the work identified in the Pay Application was completed pursuant to the terms of the Contract. Hill's certification related to the manner in which the work on the Project was completed. 4 MVR has pointed to no basis upon which the Court can reasonably conclude that Hill's assurance regarding compliance with the terms of the Contract included a representation regarding the percentage of work completed. 4 MVR has pointed to and the Court finds no provision in the Contract requiring that particular percentages of the Project were completed by particular dates.[12] And 4 MVR provides no other basis for the Court to reach that conclusion.

Instead, as Hill confirmed during his Rule 30(b)(6) deposition, pursuant to the language of the certifications on the Pay Applications, representations regarding the progress of the work on the Project – in other words, the percentage of completion of the Project – were guaranteed by Jacobsen. Hill's RA, Tab 2, Burn's Dep. at 79:4-87:18, September 10, 2015. During her Rule 30(b)(6) deposition, Leinbach confirmed that it was Jacobsen, as the architect, that certified on each of the Payment Applications that the percentage of completion was accurate. Hill's RA, Tab 6, Leinbach's Dep. at 62:5-15, Sept. 21, 2015. Leinbach explained that she, *inter alia*, conducted

---

[11] While Hill's certifications on the Pay Applications also represented that "all amounts have been paid by the Contractor for Work for which previous Certificates of Payment were issued and payments received from the owner," 4 MVR does not rely upon that portion of the certification in asserting this claim.

[12] In its response to Hill's statements of facts, D. 283 ¶ 372, 4 MVR references section 5.1.5 of the Contract. That provision, however, provides only that "Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment." Hill's RA, Tab 12, Ex. 9, AIA Document A101-2007 § 5.1.5, HILL 000008; 4 MVR's RA, Tab 8, Ex. 9, AIA Document A101-2007 § 5.1.5, HILL 000008. The provision does not assign Hill the responsibility for that assertion or its certification.

site visits when able and reviewed photographs of the Project to "compare what was on the application for payment with the progress to date" and then "determine percentage of completion." Id. at 70:20 - 73:19.

For instance, 4 MVR alleges that on Pay Application 41 Hill represented that the Project was 70.8% complete and on Pay Application 42 Hill represented that the Project was 71.8%.  D. 81 ¶ 68.  4 MVR asserts that those percentages are ascribable to Hill because Hill signed the Pay Applications.  Hill's RA, Tab 17 at 25, No. 17, 4 MVR's Answers to Interrogatories.  Pay Applications 41 and 42 do not, however, contain a representation from Hill that the Project was 70.8% and 71.8% complete respectively.  Hill's RA, Tab 51, Ex. 13, AIA Doc. G702-1992, HILL 003673.  Instead, Hill's certification on those Pay Applications – as with all Pay Applications – was limited (in relevant part) to an assurance that the work billed on that Pay Application had been completed in accordance with the terms of the Contract.  4 MVR does not point to any other document that supports its contention that Hill affirmatively represented on Pay Application 41 and 42 that the Project was 70.8% and 71.8% complete or that Hill certified that any percentages that appeared in the Pay Applications were accurate.

Because 4 MVR has failed to produce evidence showing that the representations regarding percentage of work completed can be ascribed to Hill, 4 MVR has failed to show a false statement and 4 MVR's misrepresentation claim fails.  See, e.g., 20 Atl. Ave. Corp. v. Allied Waste Indus., Inc., 482 F. Supp. 2d 60, 93-94 (D. Mass. 2007) (allowing summary judgment where the record did not support a finding that there was a misrepresentation); NPS, LLC v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 174-175 (D. Mass. 2010) (granting summary judgment where there was no misrepresentation because the alleged misrepresentation did not rise to the level of an actionable statement).

### b.  The Percentages Were Not Within Hill's Actual Knowledge

Moreover, even if the representations regarding percentage of work completed could be ascribed to Hill, the claim fails because (1) the percentages were mere estimates; and (2) the percentages were not susceptible to Hill's knowledge because they were within Jacobsen's specialized expertise as the architect on the Project.  Courts have repeatedly held that "only statements of fact are actionable in any misrepresentation action."  <u>Rockland Trust Co. v. Computer Associates Int'l, Inc.</u>, No. 95-cv-11683-DPW, 2007 WL 2746804, at *12 (D. Mass. Aug. 31, 2007) (citation omitted).  Opinions, estimates and judgments are not actionable because they are not susceptible of actual knowledge.  <u>See</u> <u>Powell v. Rasmussen</u>, 355 Mass. 117, 118 (1969).

The process that was employed to determine the estimate regarding the percentage of work completed on the Project demonstrates that the percentage was an estimate.  During his Rule 30(b)(6) deposition, Burns affirmed that percentages of completion for the purposes of the Pay Applications were determined through a "reasonableness standard."  Hill's RA, Tab 2, Burn's Dep. at 102:13-103:22 and 186:23-187:4, September 10, 2015.  Burns outlined that the process involved, *inter alia*, familiarizing oneself with the plans and written specifications, determining the work that was required, collecting information from "Mr. Hill's company" and then making an estimate of the percentage of the work completed.  <u>Id.</u>  Leinbach described the estimates of the percentages of completion as a "dynamic process" and "not an exact science."  Hill's RA, Tab 16, Leinbach's Dep. at 85:12-86:2, Sept. 22, 2015.  Thus, it is clear that the percentages in the Pay Applications were estimates.  Such estimates cannot serve as the basis of a misrepresentation claim against Hill.  <u>See, e.g.</u>, <u>Rockland Trust Co. v. Computer Associates Int'l, Inc.</u>, No. 95-cv-11683-DPW, 2007 WL 2746804, at *13 (D. Mass. Aug. 31, 2007) (rejecting misrepresentation claim where the alleged misrepresentation was a matter of "opinion, or at least a question of degree" and

the plaintiff had "ample opportunity . . . to make its own judgment" regarding the subject matter of the alleged misrepresentation).

Moreover, these estimates were uniquely within the knowledge of Jacobsen because they drew upon Jacobsen's expertise as an architect.  While Burns stated during his deposition that "the general contractor[]" made initial representations, Burns also stated that Jacobsen, as the architect, did more than "opin[e]" as to the percentage of work that was completed.  Hill's RA, Tab 2, Burn's Dep. at 103:21-104:22, September 10, 2015.  Burns expected Jacobsen, as an architect, "to use a level of industry care that an architect would customarily use to review such an assertion by the general contractor."  Id. at 186:23-187:4.  In certifying the statement regarding the percentage of work completed, Jacobsen drew upon site visits, photographs, an assessment of the Project's plans and written specifications, further information it sought from Hill as needed, and combined those considerations with "a level of industry care that an architect would customarily use to review." Id.; D. 239 ¶ 219; D. 283 ¶ 219.  Thus, Jacobsen drew upon its architectural experience to make the final determination on the percentage of work.  D. 239 ¶ 311; D. 283 ¶ 311.  In the end, it was Jacobsen that "evaluated and certified the reasonableness of the percentages of completion."  D. 239 ¶ 311; D. 283 ¶ 311.

Thus, 4 MVR's claim fails because it cannot be reasonably inferred that Hill could have known that the final estimate that was certified by Jacobsen as an architecture was patently false.[13] The final estimates reflected an expertise in architecture that Hill lacked.  See, e.g., Cummings v. HPG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001) (granting summary judgment where the plaintiff failed to produce any evidence that defendant could have known that the alleged misrepresentation

---

[13]  Relatedly, this representation concerning percentage of work completed which 4 MVR had the ability to confirm itself is not actionable.  See Fernandes v. Rodrigue, 38 Mass. App. Ct. 926, 928 (1995) (granting summary judgment and explaining that statement regarding estimate of land area was not actionable where buyer had ability to measure the area for himself).

was false when made); <u>Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc.</u>, 679

F. Supp. 2d 192, 210 (D. Mass. 2010) (granting summary judgment where the nonmoving party

offered "no evidence that [the moving party] knew or should have known that the statement was

false"); <u>Lawton v. Dracousis</u>, 14 Mass. App. Ct. 164, 170 (1982) (rejecting misrepresentation

claim because, *inter alia*, there was no evidence that speaker had knowledge of falsity of

statements). For all of these reasons, 4 MVR's two misrepresentation claims that turn upon

representations regarding the percentages of work completed fail.

### c.  The Contract Did Not Expressly Bar the Billing of Cost Overruns

To the extent that 4 MVR's cost overruns related claim is instead premised upon the

allegation that Hill's mere inclusion of cost overruns on Pay Applications 41 and 42 constituted

an intentional misrepresentation, D. 253 at 17, the claim still fails.  4 MVR charges that Hill knew,

based upon the Contract terms and express communications from Jacobsen, that Hill Construction

could not bill for "material and labor [cost] overruns" against budget line items.  <u>Id.</u> at 16-17.  4

MVR further charges that Hill nonetheless included cost overruns on Pay Application 41 and 42

for Silverio Tile's work and so Hill's certification that the work being billed was performed in

accordance with the Contract constituted a misrepresentation.[14]  <u>Id.</u> at 17.  4 MVR fails, however,

to point to a contractual provision prohibiting Hill Construction from including cost overruns on

Pay Applications.  Instead, the Contract was a fixed price contract of $22,751,741 and that amount

was spread over eighty-one categories of work based upon estimates.  Hill's RA, Tab 12, Ex. 9,

AIA Doc. A101-2207, Expense Budget dated Feb. 19, 2010, HILL 000015-000016.  As they

appear on the face of the Contract, the categories of work contain no language excluding cost

---

[14]  Importantly then 4 MVR is not alleging that the work related to the cost overruns was not completed. D. 254 ¶¶ 269-284.  Instead, 4 MVR contends that Hill Construction was not permitted to bill for cost overruns even if the work giving rise to the cost overruns has been completed.  <u>Id.</u>

overruns.  Id.  To the contrary, as a fixed price contract, Hill Construction was to be paid a set amount regardless of whether the cost of completing the Project ultimately fell below or above the pre-determined amount.  Hill's RA, Tab 12, Ex. 9, AIA Doc. A101-2207 § 4.1, HILL 000005; 4 MVR's RA, Tab 8, AIA Doc. A101-2207 § 4.1.  Since Hill's certification was that the work billed was completed in accordance with the Contract and the Contract does not expressly prohibit billing for cost overruns, 4 MVR's misrepresentation claim fails.

The conclusion that the Contract did not bar billing for overrun costs is further supported by 4 MVR's assertion that a correction on Pay Application 40 and statements in emails should have alerted Hill to the impermissibility of billing cost overruns.  4 MVR asserts that "[a]fter adjustments were made on Pay Application 40 for improperly billed labor and material cost overruns, Hill either knew or should have known that Hill Construction could not bill for labor and material cost overruns to budgeted line items."  D. 254 ¶ 273; 4 MVR's RA, Tab 67, Ex. 161, Burn's Nov. 10, 2011 Email, 4 MVR 0044268.  In addition, 4 MVR asserts that "[t]his was also expressly communicated" in a November 10, 2011 email from Leinbach to Hill Construction representatives; in the email, Leinbach wrote that "material & labor overruns cannot be billed on the pay applications."  D. 254 ¶ 274; Hill's RA, Tab 67, Ex. 161, Leinbach's Nov. 20, 2011 Email, 4 MVR 0044268.  Even if these statements prohibited Hill Construction from billing for cost overruns moving forward, that requirement arose from communications outside of the Contract and so the requirement was not incorporated into Hill's certification that the work billed was performed in accordance with the Contract.  For all of these reasons, Hill's certification on the Pay Applications does not support a misrepresentation claim for billing cost overruns.[15]

---

[15]  At most, 4 MVR's allegations regarding cost overruns amounts to a good faith dispute over billing. Where a "defendant's good-faith interpretation of its contractual obligations differs from the plaintiff's, the defendant lacks the intent to deceive that is a requisite of fraud cases." Levinson v. PSCC Servs., Inc., No. 3:09-cv-00269-PCD, 2010 WL 5477250, at *10 (D. Conn. Dec. 29,

**2.      Neither Party Is Entitled to Summary Judgment on 4 MVR's Misrepresentation Claim Related to Retainage Reduction**

4 MVR alleges that Hill's representation on Pay Applications that "all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner" was an intentional misrepresentation because Hill had been paid a reduction in retainage from 10% to 4% for "line Item 42 ('Tile & Tile Floors')," change order 003 and "line Item #33 ('Cabinet Hardware')" and Hill Construction had not paid the subcontractors their share of that reduction. D. 253 at 15-16. In response, Hill contends that 4 MVR's claim fails because (1) there is no evidence that the misrepresentation was intentional; and (2) 4 MVR did not pay the full amount Hill Construction requested on Pay Application 39 and instead 4 MVR withheld $ 47,250. D. 277 at 19-20. Hill does not dispute that Hill Construction requested and received a retainage reduction from 10% to 4% on the two line items and that Hill Construction failed to pay the subcontractors their corresponding retainage reduction. D. 277 at 19-20.

Pursuant to the Contract, the retainage operated on a sliding scale: as substantial portions of the Project were completed, the percentage of the contract value held in retainage decreased. More specifically, Hill Construction was permitted to have the retainage amount reduced from

---

2010); O' Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 213 (2008) (granting summary judgment on intentional misrepresentation claim based upon differing interpretations of a fire insurance policy); Whaley v. Auto Club Ins. Ass'n, 891 F. Supp. 1237, 1240 (E.D. Mich. 1995), aff'd, 129 F.3d 1266 (6th Cir. 1997) (stating that "[t]his court cannot find any evidence of . . . an intentional scheme to defraud . . . [where] the pleadings show that this case presents nothing more than a good faith dispute as to how a state statute should be interpreted"); see Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (explaining that "a good faith dispute over billing . . . is an insufficient basis for 93A liability").

10% to 4% whenever a category of work set forth in the schedule of values was 90% completed.

Section 5.1.8 of the Contract provides:

> When the Architect determines that any category of the Work set forth in the Schedule of Values is ninety percent (90%) complete in accordance with the Contract Documents, then at the request of the Contractor (i) sixty percent (60%) of the retainage held for such category of the Work pursuant to Sections 5.1.6.1 and 5.1.6.2 above shall be released, and (ii) future retainage for such category of the Work pursuant to said sections shall be reduced to four percent (4%).

Hill's RA, Tab 12, Ex. 9, HILL 000009, AIA Document A101-2007 § 5.1.8;  4 MVR's RA, Tab 8, Ex. 9, HILL 000009, AIA Document A101-2007 § 5.1.8.  When the retainage was reduced and Hill Construction received the corresponding increase in the payment amount, Hill Construction was obligated to pay the subcontractors their share of the increased payment before submitting another Pay Application.  Section 9.6.2 of the General Conditions of the Contract provides:

> The Contractor shall not withhold from any Subcontractor sums due the Subcontractor for completed Work for which the Owner has paid.

Hill's RA, Tab 12, Ex. 9, HILL 000211, AIA Document A101-2007 § 9.6.2; 4 MVR's RA, Tab 8, Ex. 9, HILL 000211, AIA Document A101-2007 § 9.6.2.  Moreover, Hill certified on Pay Applications that "all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that the current payment herein [was] now due." See e.g., D. 82 ¶ 34; D. 251 at 18-19; D. 255 ¶ 44; D. 253 at 13. Thus, before Hill Construction could be paid for another Pay Application, Hill had to (and did) represent that the last payment 4 MVR made to Hill had been properly distributed to subcontractors.

On Pay Application 39, Hill requisitioned for a reduction in the retainage from 10% to 4% – effectively representing that the percentage of work completed on line item #42 exceeded 90%. 4 MVR's RA, Tab 58, AIA Doc. G702-1992, Pay Application #39 dated October 14, 2011, HILL

008303.  While the request for reduction is undisputed, to establish a claim for intentional misrepresentation, 4 MVR must also demonstrate that Hill's representation that it had paid the subcontractors the amount they were due from the retainage reduction was false.  4 MVR has failed to do so.  Even though Hill has not disputed that Hill Construction failed to pay the subcontractors their share of the reduced retainage, D. 277 at 19, it remains true that on a summary judgment motion the moving party bears the burden of producing evidence to support its claim.  See Bartus v. United States, 930 F. Supp. 679, 680 (D. Mass. 1996) (stating that "[t]he moving party bears the burden of producing affirmative evidence, or pointing to a lack of evidence, showing that no genuine issue of material fact exists").  4 MVR has not pointed to any evidence in the record conclusively establishing that the subcontractors were not paid.[16]  Still, based upon the substantial evidence regarding Hill Construction's insolvency at the time, D. 256, the fact that Hill Construction's Bank Loan was in default, D. 256, and the fact that Hill Construction ultimately reported to 4 MVR that it lacked sufficient funds to complete the Project, D. 283 ¶ 374, D. 81-2, D. 81-3, a reasonable factfinder could infer that Hill Construction failed to pay the subcontractor their share of the retainage reduction.  Accordingly, there exists a genuine issue of material fact regarding whether Hill Construction failed to pay the subcontractors as Hill represented Hill Construction had done.

Finally, Hill's argument that 4 MVR's claim fails because 4 MVR did not make full payment on Pay Application 39, D. 277 at 20, does not entitle him to summary judgment.  Hill

---

[16]   In its summary judgment motion, 4 MVR cites to no source for its assertion that "Hill's statements and representations were false as they related to retainage on line Item #42 ("Tile & Tile Floors"); Change Order 003; and line Item #33 ("Cabinet Hardware") because while Hill had billed and been paid a reduction in retainage from 10% to 4% on these items, it had not paid the subcontractors and suppliers their corresponding retainage and never paid them the retainage reduction."  D. 253 at 16.  In its reply brief, 4 MVR merely emphasizes that Hill did not deny that it had requested the retainage reduction and not paid the subcontractors their share.  D 301 at 16.

points to no provision in the Contract allowing Hill to withhold payments due to subcontractors simply because liquidated damages were assessed against Hill Construction.  For all of these reasons, neither party is entitled to summary judgment on this claim.  See, e.g., Arroyo-Perez v. Demir Grp. Int'l, 762 F. Supp. 2d 374, 385 (D.P.R. 2011) (denying both parties' motions for summary judgment where the Court could not resolve an element of the claim because neither party proffered sufficient evidence).

> ### 3.      Hill Is Entitled to Summary Judgment on 4 MVR's Misrepresentation Claim Related to Incorporation of the Contract's Terms into the Subcontracts

4 MVR moves for summary judgment on this claim, contending that Hill's certification in Pay Applications that "the Work covered by [that] Application for Payment has been completed in accordance with the Contract Documents" constituted a misrepresentation because Hill failed to incorporate the terms of the Contract into Hill Construction's subcontracts.  D. 253 at 17-18. Hill also moves for summary judgment on this claim.  D. 234; D. 276.  Hill argues that he is entitled to summary judgment because Hill's certification on Pay Applications that work on the Project was completed in accordance with the Contract did not include a representation that the Contract had been incorporated into the subcontracts.  D. 277 at 22.  The Court agrees with Hill.

As discussed, on each pay application submitted to 4 MVR, Hill certified that "the Work covered by [that] Application for Payment has been completed in accordance with the Contract Documents."  D. 251 at 18; D. 255 ¶ 44; D. 253 at 13; D. 254 ¶ 188.  In the Contract, "Work" is defined as "the construction and services required by the Contract Documents . . . and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations."  Hill's RA, Tab 11, Ex. 129, AIA Document A201-2007, Article I § 1.1.3; 4 MVR's RA, Tab 8, Ex. 9, AIA Document A201-2007, Article I § 1.1.3, HILL

000189.  "Contract Documents" are defined as the "Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to the execution of the contract, [and] all other documents listed in the Agreement and Modifications issued after execution of the contract Agreement."  Id.

Hill's certification on Pay Applications that "Work" was performed in accordance with the Contract, therefore, referred to the construction, services, labor and materials provided by Hill Construction and ensured that the construction work was completed in accordance with documents such as the design plans and specification.  4 MVR points to no contractual language that supports 4 MVR's assertion that the terms of the subcontracts fall within the contractual definition of "Work."  4 MVR notes that there is a provision in the Contract requiring that Hill Construction execute written agreements with its subcontractors that incorporate the terms of the Contract.[17]  4 MVR's RA, Tab 8, Ex. 9, HILL 000203, AIA Document A101-2007 § 5.3; Hill's RA, Tab 12, Ex. 9, AIA Document A101-2007 § 5.3, HILL 000203.  4 MVR fails, however, to show that a statement regarding compliance or noncompliance with this provision was contained in Hill's certification on Pay Applications.

Because Hill's representation that the Work was completed in accordance with the Contract documents did not include a representation that the subcontracts contained certain terms, 4 MVR's misrepresentation claim fails.[18]  See, e.g., Amorim Holding Financeria, S.G.P.S., S.A. v. C.P.

---

[17] The Contract provides "[b]y appropriate written agreement the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities . . . which the Contractor . . . assumes towards the Owner and Architect."  4 MVR's RA, Tab 8, Ex. 9, AIA 201-2009 § 5.3.1, HILL 000203.

[18]  Here, again, the Court notes that to the extent that 4 MVR charges that Hill, in good faith, misinterpreted its obligation under the Contract to incorporate the terms of the Contract into the subcontractor, a misrepresentation claim on that ground fails.  See, e.g., Levinson v. PSCC Servs., Inc., No. 3:09-cv-00269-PCD, 2010 WL 5477250, at *10 (D. Conn. Dec. 29, 2010).

Baker & Co., 53 F. Supp. 3d 279, 297-98 (D. Mass. 2014) (concluding that the misrepresentation claim regarding a particular investment failed as a matter of law because the record was devoid of a misrepresentation regarding the investment).  Accordingly, Hill's motion for summary judgment on this claim is granted.

### D.    Motions for Summary Judgment on 4 MVR's Mass. Gen. L. c. 93A Claims

Since 4 MVR has demonstrated that Hill misrepresented Hill Construction's insolvency, Hill has proven a claim that gives rise to an unfair or deceptive act for a claim under Mass. Gen. L. c. 93A.  Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979) (citation omitted). The defendant's conduct must have "attain[ed] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. at 504.  "[C]ommon law deceit is normally 'rascality' enough" to constitute an unfair and deceptive practice under Mass. Gen. L. c. 93A.  Nickerson v. Matco Tools Corp., Div. of Jacobs Mfg. Co., 813 F.2d 529, 531 (1st Cir. 1987) (citation omitted)); Winter Panel Corp. v. Reichhold Chemicals, Inc., 823 F. Supp. 963, 975 (D. Mass. 1993) (citation omitted).  Thus, "it is clear that common law actions for fraud and deceit are within the contemplation of an 'unfair act' under the statute."  Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986).  4 MVR's Mass. Gen. L. c. 93A claims rise and fall with the intentional misrepresentation claims upon which they are based.  See Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760 (1996).

Given the Court's ruling about Hill's misrepresentation of the financial health of Hill Construction in entering into a $22,751,741 construction project, this claim may serve as the basis of a Mass. Gen. L. c. 93A claim and this claim may proceed to trial.

Conversely, because Hill has demonstrated entitlement to summary judgment on 4 MVR's allegation that Hill misrepresented that Hill Construction had secured funding and financing, Hill is entitled to summary judgment on 4 MVR's Mass. Gen. L. c. 93A claim in so far as it is premised upon this allegation. For the same reasons, Hill is entitled to summary judgment on 4 MVR's Mass. Gen. L. c. 93A claim in so far as it is premised upon the allegation that Hill falsely represented its acquisition of financing and the allegation that Hill falsely misrepresented on Pay Applications that (1) the percentage of work completed on the Project; and (2) that Hill Construction incorporated the terms of the Contract into the subcontracts.

### E.     4 MVR's Motion for Judgment on Hill's Affirmative Defenses Is Denied

4 MVR also seeks summary judgment on certain of Hill's affirmative defenses. D. 232; 253 at 19. 4 MVR does not offer substantive briefing in support of its request for summary judgment on Hill's affirmative defenses and does not engage the factual record to support its request for summary judgment. D. 253 at 19-20. Instead, 4 MVR incorporates by reference and relies exclusively upon the briefing in a motion for judgment on the pleadings as to Hill's defenses that 4 MVR filed on September 23, 2014. D. 123. The Court denied this motion. D. 194.

To the extent that Hill has asserted within the summary judgment briefing any of the defenses that 4 MVR challenges as to any claims addressed in this Memorandum and Order, the Court has analyzed the merit of those defenses in context of its ruling on the pending motions. Beyond that, the Court cannot assess the multiple defenses upon which 4 MVR now seeks summary judgment. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

### VII.   Conclusion

For the foregoing reasons, the Court rules as follows:

- The various motions for leave to file reply briefs, D. 268; D. 275, are ALLOWED *nunc pro tunc* and those briefs, D. 268-1 and D. 275-1 were considered by the Court in the resolution of the pending motions.

- The motion for leave to file papers in excess of page limit, D. 274, ALLOWED *nunc pro tunc.*

- The Court DENIES Hill's motion to strike new allegations.  D. 262.

- The Court DENIES Hill's motion to strike Schaedel's affidavit.  D. 249.

- The Court DENIES Hill's motion to strike Schaedel's second affidavit.  D. 303.

- The Court DENIES 4 MVR's motion to strike Lovett's affidavit.  D. 288.

- The Court DENIES as moot Hill's motion to strike Burn's affidavit, except as to paragraph 40 which the Court does not strike. D. 259.

- The Court DENIES as moot 4 MVR's motion to strike Hill's affidavit.  D. 295.

- The Court DENIES in part and ALLOWS in part 4 MVR's motion for summary judgment, D. 232 and D. 240, in the following manner:

  o The Court ALLOWS 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill falsely misrepresented Hill Construction's insolvency.

  o  The Court DENIES 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill falsely represented that Hill Construction had secured financing and funding.

  o The Court DENIES 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill's certification on Pay Applications amounted to a misrepresentation because Hill failed to

50

incorporate the terms of the Contract between 4 MVR and Hill Construction into Hill Construction's subcontracts with the subcontractors.

o The Court DENIES 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill's certification on Pay Applications amounted to a misrepresentation because Hill Construction had not paid its subcontractors retainage reductions in the manner required by the Contract.

o The Court DENIES 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claims that Hill's certification on Pay Applications amounted to a misrepresentation because Hill falsely reported the percentage of work completed on the Project.

o The Court DENIES 4 MVR's motions for summary judgment in so far as they seek dismissal of certain of Hill's affirmative defenses.

• The Court DENIES in part and ALLOWS in part Hill's motion for summary judgment, D. 234, and Hill's cross motion for summary judgment, D. 276, in the following manner:

o The Court DENIES Hill's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill falsely misrepresented Hill Construction's insolvency.

o The Court ALLOWS Hill's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill falsely represented that Hill Construction had secured financing and funding.

o  The Court ALLOWS Hill's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill's certification on Pay Applications amounted to a misrepresentation because Hill failed to incorporate the terms of the Contract between 4 MVR and Hill Construction into Hill Construction's subcontracts with the subcontractors.

o  The Court DENIES Hill's motions for summary judgment in so far as they seek judgment on 4 MVR's claim that Hill's certification on Pay Applications amounted to a misrepresentation because Hill Construction had not paid its subcontractors retainage reductions in the manner required by the Contract.

o  The Court ALLOWS 4 MVR's motions for summary judgment in so far as they seek judgment on 4 MVR's claims that Hill's certification on Pay Applications amounted to a misrepresentation because Hill falsely reported the percentage of work completed on the Project.

Accordingly, this case may proceed to trial on 4 MVR's misrepresentation claim against Hill regarding only the retainage reductions; and 4 MVR's Chapter 93A claim limited to Hill's misrepresentation of Hill Construction's solvency and the retainage reductions.  On or before September 27, 2016, 4 MVR and Hill shall indicate in a joint statement, not to exceed five (5) pages in total, whether they consent to a bench trial on these claims, a proposed date for such trial (before the end of this year) and the expected length of trial.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge